IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

In re: )
)
VIJAY K. TANEJA, ) Chapter 11
) Case No. 08-13293-SSM
Debtor. ) (Jointly Administered)
)

## MOTION OF VIRGINIA COMMERCE BANK
## FOR RELEASE OF ESCROWED FUNDS
## AND MEMORANDUM IN SUPPORT
## (4633 HOLLY AVENUE AND 9034 BRONSON ROAD)

Virginia Commerce Bank ("VCB" or "the Bank") moves for release of the funds escrowed in connection with the closings on 4633 Holly Avenue and 9034 Bronson Road, in support of which, VCB states as follows:

### Background

1. These jointly administered cases were filed on June 8, 2008. Mr. Gold is the Chapter 11 Trustee. No Plan of Reorganization has been proposed in these cases, as of the filing of this Motion.[1]

2. VCB is the secured lender with respect to the two properties at issue - 4633 Holly Avenue, Fairfax, Virginia and 9034 Bronson Road, Potomac, Maryland. VCB is an oversecured creditor on both properties, and is therefore entitled to all allowable post-petition interest, fees and charges, pursuant to 11 U.S.C. § 506(b).

3. The issues are the same with respect to both properties – the allowability of default rate interest and late charges, as provided for in the Bank's loan documents.

---

[1] The Debtors in these jointly administered cases are Vijay Taneja, NRM Investments, Inc., Financial Mortgage Inc., Taneja Center, Inc., and Elite Entertainment, Inc.

## 4633 Holly Avenue

4. On August 24, 2005, the Bank made a loan to NRM Investments, Inc. and Mr. Taneja, jointly and severally, in the principal amount of $412,500 ("Holly Avenue Loan"). A copy of the Deed of Trust Note ("Holly Avenue Note"), together with two Allonges and Modification Agreements, is attached as <u>Exhibit A</u>.

5. The Holly Avenue Loan was secured by a Deed of Trust on the property known as 4633 Holly Avenue, Fairfax, Virginia. A copy of the Deed of Trust is attached as <u>Exhibit B.</u>

6. The Holly Avenue Loan would have matured by its terms on November 24, 2008. <u>Exhibit A</u>, Second Allonge, p. 2. On June 2, 2008, the Bank gave written notice of default, and notified the Debtors of the Bank's intent to accelerate the indebtedness, unless the defaults, both monetary and non-monetary, were cured within the applicable time periods set forth in the Holly Avenue Note (twelve (12) days and twenty-five (25) days, respectively). A copy of the written notice of default is attached as <u>Exhibit C</u>.

7. On June 8, 2008, prior to the expiration of the twelve (12) day cure period for monetary defaults, the Debtors filed voluntary bankruptcy petitions in this Court.

8. On October 13, 2008, the Bank filed its proof of claim with respect to the 4633 Holly Avenue debt. A copy of the Bank's proof of claim is attached as <u>Exhibit D</u>. In its proof of claim, the Bank specifically reserved the right to assess default rate interest, as an oversecured creditor under 11 U.S.C. § 506(b). *Id.*

9. On October 22, 2009, the 4633 Holly Avenue property was sold, with Court approval. By agreement, the Bank has been paid the principal, interest at the non-

default rate, and attorney's fees. However, the Bank has not been paid the following amounts: (a) Late Charges totaling $22,814.88; and (b) Default Rate Interest totaling $19,616.24 (this, being the difference between interest at the non-default rate, which was paid to the Bank, and interest at the default rate). A copy of the Report of Sale and HUD-1 for the 4633 Holly Avenue property is attached as Exhibit E.[2]

### 9034 Bronson Road

10. On April 11, 2006, the Bank made a loan to NRM Investments, Inc., and Mr. Taneja, jointly and severally, in the principal amount of $2,500,000 ("Bronson Road Loan"). A copy of the Deed of Trust Note ("Bronson Road Note"), together with two Allonges and Modification Agreements, is attached as Exhibit F.

11. The Bronson Road Loan was secured by a Deed of Trust on the property known as 9034 Bronson Road, Potomac, Maryland. A copy of the Deed of Trust is attached as Exhibit G.

12. The Bronson Road Loan matured by its terms on April 11, 2008. Exhibit F, Second Allonge, p. 2. On June 2, 2008, the Bank gave written notice of default, and intent to accelerate the indebtedness, unless the defaults, both monetary and non-monetary, were cured within the applicable time periods set forth in the Bronson Road Note (twelve (12) days and twenty-five (25) days, respectively). A copy of the written notice of default is attached as Exhibit H.

13. On June 8, 2008, prior to the expiration of the twelve (12) day cure period for monetary defaults, the Debtors filed voluntary bankruptcy petitions in this Court.

---

[2] The amounts at issue on the 4633 Holly Avenue property are still subject to the escrow in favor of GHA, Inc. for its claimed mechanic's lien. These amounts will have to continue to be held, pending a determination of the validity and priority of the mechanic's lien asserted by GHA, Inc.

14. On October 13, 2008, the Bank filed its proof of claim with respect to the 9034 Bronson Road debt. A copy of the Bank's proof of claim is attached as <u>Exhibit I</u>. In its proof of claim, the Bank specifically reserved the right to assess default rate interest, as an oversecured creditor under 11 U.S.C. § 506(b). *Id.*

15. On October 28, 2009, the 9034 Bronson Road property was sold, with Court approval. By agreement, the Bank has been paid the principal, interest at the non-default rate, and attorney's fees. However, the Bank has not been paid the following amounts: (a) Late Charges totaling $146,646.47; and (b) Default Rate Interest totaling $145,912.17 (this, being the difference between interest at the non-default rate, which was paid to the Bank, and interest at the default rate). A copy of the Report of Sale and HUD-1 for the 9034 Bronson Road property is attached as <u>Exhibit J</u>.

## Argument

### I. Default Rate Interest.

Section 506(b) of the Bankruptcy Code provides that an oversecured creditor shall be allowed "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). Both the 4633 Holly Avenue Note, and the 9034 Bronson Road Note, contain the following identical language with respect to default rate interest:

> In addition, if repayment of the Loan in full is not made immediately as of the date of maturity, whether by acceleration or otherwise, the Lender may charge a "default rate" of interest that is equal to three (3) percentage points above the Interest Rate.

<u>Exhibit A</u>, p. 2; <u>Exhibit F</u>, p. 2. As creditors are entitled to their bargained-for post-petition interest, there is a rebuttable presumption in favor of enforcing the default rate interest provided for in the contract. *In re Terry Ltd. Partnership*, 27 F.3d 241, 243

(7th Cir. 1994). Courts generally allow an oversecured creditor to recover the default rate interest provided for in the contract, unless the higher default rate interest would produce an inequitable result. *In re Southland Corp.*, 160 F.3d 1054, 1059-60 (5th Cir. 1998) (citations omitted).

The majority rule appears to be that the default rate interest in the contract should be enforced subject to the substantive law governing the contract, unless the Bankruptcy Code provides otherwise. *General Electric Capital Corp. v. Future Media Productions Inc.*, 547 F.3d 956, 960 (9th Cir. 2008). Counsel is unaware of any substantive law in Virginia (Virginia law governs the Holly Avenue Note) or Maryland (Maryland law governs the Bronson Road Note) which would prevent the Bank from applying the default rate interest contained in the Notes. Moreover, not only is there no provision in the Bankruptcy Code which would prohibit the Bank from applying the default rate interest, Section 506(b) of the Bankruptcy Code specifically permits it. 11 U.S.C. § 506(b).

In the case of the 9034 Bronson Road property, the Bronson Road Loan matured by its terms on April 11, 2008, approximately two months before the Debtors filed for bankruptcy. In the case of the 4633 Holly Avenue property, the Holly Avenue Loan had not matured at the time the Debtors filed for bankruptcy, but the Bank had given written notice of default, and notified the Debtors of the Bank's intent to accelerate the indebtedness, prior to the Debtors filing for bankruptcy. The terms of both Notes provide for default rate interest where the Loans mature *"whether by acceleration or otherwise."* (Emphasis added). Importantly, neither Note requires that any notice be given in order to invoke the default rate interest.

In regard to each of the properties, the Bank was oversecured. Moreover, the Bank reserved its rights to assess default rate interest in the proof of claims it filed.

It must be remembered that both Loans were commercial loans. Neither Loan was for the Debtor's principal residence. Both Loans were made to a sophisticated real estate investor, who was in the business of building and selling houses. There is nothing unconscionable, or even unfair, about applying the default rate interest to the Loans.

The default rate interest in this case is three (3) percentage points over the contract rate, which has been found to be a reasonable spread between the default rate interest and the non-default rate interest. *See In re Terry Ltd. Partnership*, 27 F.3d at 244. Other courts have approved greater spreads between the default rate interest and the non-default rate interest. *See In re Schaumburg Hotel Owner LP*, 97 B.R. 943 (Bankr.N.D.Ill. 1989) (4.3% spread reasonable); *In re Skyler Ridge*, 80 B.R. 500 (Bankr.C.D.Cal. 1987) (4% spread reasonable).

Finally, it should be noted that the Bank was not paid adequate protection payments in the course of these cases, on either Loan. Although the Bank was not paid for sixteen (16) months during these cases, it did not file a motion for relief from stay, thereby allowing the estates to proceed with voluntary sales of the properties (in the case of 9034 Bronson Road, a Tranzon Fox sponsored auction). In each case, the Bank's patience has caused the estates to receive significant proceeds over and above the Bank's debt, for the benefit of the creditors. For the foregoing reasons, the Court should enforce the agreed-upon default rate interest in the Notes, with respect to both properties.

## II. Late Charges.

Just as Section 506(b) of the Bankruptcy Code allows for an oversecured creditor to claim interest at the default rate, it also allows an oversecured creditor to claim late charges. *Mack Financial Corp. v. Ireson*, 789 F.2d 1083, 1084 (4th Cir. 1986). In *Ireson*, the 4th Circuit, applying Virginia law, allowed the creditor to recover late charges because the creditor was oversecured and the 4th Circuit found the late charges to be reasonable because they did not exceed five (5) percent of the amount of any installment. *Id.*

Both of the Notes contain the following identical language with respect to late charges:

> If at any time the Maker fails to make any scheduled payment within ten (10) days after it is due, the Lender may charge a late fee of five percent (5%) of the amount of each such payment.

Exhibit A, p. 2; Exhibit F, p. 2.

The Bronson Road Loan matured by its terms on April 11, 2008. Accordingly, the Bank is entitled to a late fee of five percent (5%) of the principal balance of the Bronson Road Loan.

With respect to the Holly Avenue Loan, although it had not matured at the time the Debtors filed for bankruptcy, the Holly Avenue Loan was in default pre-petition, and before the Debtors filed for bankruptcy, the Bank had given written notice of default, and notified the Debtors of the Bank's intent to accelerate the indebtedness. Again, both of these Loans were commercial loans given to a sophisticated real estate developer and builder. The Bank did not receive any adequate protection payments, nor did it file a relief from stay motion with respect to either property. The properties both sold for

amounts that exceeded the Bank's debt, thereby allowing the creditors to realize value with respect to both properties. The late charge of five (5) percent is neither unconscionable, nor unreasonable. For the foregoing reasons, the Court should enforce the agreed-upon late charges in the Notes, with respect to both properties.

## Conclusion

For the above-stated reasons, the Court should order the Trustee to release the escrowed funds due to the Bank for the default rate interest and the late charges, with respect to both Loans; provided, however, that in the case of the 4633 Holly Avenue Loan, such payment shall be subject to a determination of the validity and priority of the mechanic's lien claimed by GHA, Inc.

Respectfully submitted,

Virginia Commerce Bank
Plaintiff, by counsel

**Miles & Stockbridge P.C.**
1751 Pinnacle Drive, Suite 500
McLean, VA 23102
Telephone: 703-610-8664
Facsimile: 703-610-8686
E-mail: bkenney@milesstockbridge.com


By: /s/ *Brian F. Kenney*
    Brian F. Kenney (VSB #23199)
    *Counsel for Virginia Commerce Bank*

# CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of November 2009, a copy of the foregoing **Motion Of Virginia Commerce Bank For Release Of Escrowed Funds And Memorandum In Support (4633 Holly Avenue And 9034 Bronson Road)** was served via U.S. Postal Service, first-class postage prepaid to the following:

*Trustee, H. Jason Gold:*
Alexander McDonald Laughlin
Wiley Rein LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA 22102

*Counsel Debtor:*
Robert M. Marino
Redmon Peyton & Braswell, LLP
510 King St., Ste. 301
Alexandria, VA 22314-3143

*US Trustee:*
Frank J. Bove
Office of the U.S. Trustee
115 S. Union St., Ste. 210
Alexandria, VA 22314

*Official Committee of Unsecured Creditors of Vijay K. Taneja*:
Lawrence E. Rifken
McGuire Woods, LLP
1750 Tysons Blvd., Ste. 1800
McLean, VA 22102-3915

*Chapter 7 Trustee re GHA, Inc.*
Kevin R. McCarthy
1751 Pinnacle Dr., Ste. 1115
McLean, VA 22101

/s/ Brian F. Kenney
Brian F. Kenney