Lawrence E. Rifken, Esq. (VSB No. 29037)
John T. Farnum, Esq. (VSB No. 74075)
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102-4215
(703) 749-1300

*Counsel to the Official Committee of*
*Unsecured Creditors of Vijay K. Taneja, et al.*

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Vijay K. Taneja, *et al.*,[1] | ) | Case No. 08-13293-SSM |
|  | ) |  |
|  | ) | (Jointly Administered) |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION TO
WILEY REIN LLP'S FIFTH INTERIM APPLICATION FOR REIMBURSEMENT OF FEES
AND COSTS AS COUNSEL FOR THE TRUSTEE AND CHAPTER 11 TRUSTEE H. JASON
GOLD'S THIRD INTERIM APPLICATION FOR ALLOWANCE OF COMPENSATION**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the

above-captioned jointly administered cases of Vijay K. Taneja, et al. (the "Debtors"), by and

through its undersigned counsel, hereby files this objection (the "Objection") to WileyRein LLP's

("WileyRein" or "WR") Fifth Interim Application for Reimbursement of Fees and Costs as

Counsel for the Trustee ("WR's Fifth Interim Application") and Chapter 11 Trustee H. Jason

Gold's Third Interim Application for Allowance of Compensation (the "Trustee's Third Interim

Application"), respectively. In support thereof, the Committee respectfully states as follows:

**BACKGROUND**

1.      On June 9, 2008, Vijay K. Taneja, Elite Entertainment, Inc., Financial Mortgage,

Inc., NRM Investments, Inc., and Taneja Center, Inc. (collectively, the "Debtors") filed with the

---

[1] The debtors in these jointly administered cases include Elite Entertainment, Inc. (08-13286-SSM), Financial Mortgage, Inc. (08-13287-SSM), NRM Investments, Inc. (08-13290-SSM), Taneja Center, Inc. (08-13292-SSM), and Vijay K. Taneja (08-13293-SSM).

*TCO 358,290,354v4 2-19-10*

United States Bankruptcy Court for the Eastern District of Virginia, Alexandria Division (the "Court") their respective voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

2.      On July 18, 2008, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors in the case of Vijay K. Taneja, Inc. (the "Committee"). The United States Trustee appointed (i) Franklin Bank, S.S.B., (ii) Virginia Commerce Bank, and (iii) Ali Gharai to the Committee.[2]

3.      On July 19, 2008, this Court entered an order directing the United States Trustee to appoint a Chapter 11 Trustee for Vijay K. Taneja.

4.      On July 21, 2008, based in part upon the Committee's recommendation, the United States Trustee appointed H. Jason Gold as the Chapter 11 Trustee for Vijay K. Taneja. By order dated July 22, 2008, the Court confirmed the appointment of Mr. Gold as the Chapter 11 Trustee for Vijay K. Taneja.

5.      On August 13, 2008, the Court entered an order providing for the joint administration of the above-captioned cases (the "Jointly Administered Cases"), the appointment of a common trustee in each of the Jointly Administered Cases, and the appointment of the Committee in each of the Jointly Administered Cases.

6.      On August 19, 2008, based in part upon the Committee's recommendation, the United States Trustee appointed H. Jason Gold to serve as Chapter 11 Trustee in Elite Entertainment, Inc. (08-13286-SSM), Financial Mortgage, Inc. (08-13287-SSM), NRM Investments, Inc. (08-13290-SSM), and Taneja Center, Inc. (08-13292-SSM) (collectively, the "Corporate Cases"). By order dated August 21, 2008, the Court confirmed Mr. Gold's appointment as the Chapter 11 Trustee in the Corporate Cases. Accordingly, H. Jason Gold (the "Trustee") currently serves as the Chapter 11 Trustee in all of the Jointly Administered Cases.

---

[2] On July 13, 2009, Ali Gharai resigned from the Committee.

TCO 358,290,354v4 2-19-10

7.      On August 26, 2008, the United States Trustee appointed (i) Ferguson

Enterprises, (ii) GMAC, and (iii) SGA Companies, Inc. as additional members of the

Committee.[3]

### WileyRein LLP's Applications for Reimbursement of Fees and Costs as Counsel for the Trustee

8.      On September 26, 2008, WileyRein filed its First Interim Application for Payment

of Fees and Costs as Counsel for the Trustee for the six (6) week period from July 21, 2008

through August 31, 2008 ("WR's First Interim Application") seeking allowance of fees and

expenses in the amounts of $173,857.40 and $4,285.03, respectively, for a total award of

$178,142.43.  By Order entered on October 29, 2008, this Court approved WileyRein's First

Interim Application, awarding fees and expenses in the amount of $178,142.43.  During the

period July 21, 2008 through August 31, 2008, WR's First Interim Application indicates that

timekeepers at WileyRein billed 444.2 hours.[4]

9.      On January 30, 2009, WileyRein filed its Second Interim Application for Payment

of Fees and Costs as Counsel for the Trustee for the four (4) month period from September 1,

2008 through December 31, 2008 ("WR's Second Interim Application") seeking allowance of

fees and expenses in the amounts of $574,700.60 and $7,041.15, respectively, for a total award

of $581,741.75.  By Order entered on March 3, 2009, the Court approved WR's Second Interim

Application, awarding fees and expenses in the amount of $574,856.15.  During the period

September 1, 2008 through December 31, 2008, WR's Second Interim Application indicates that

timekeepers at WileyRein billed 1,493.6 hours.

10.      On May 29, 2009, WileyRein filed its Third Interim Application for Payment of

Fees and Costs as Counsel for the Trustee for the four (4) month period from January 1, 2009

through April 30, 2009 ("WR's Third Interim Application") seeking allowance of fees and

---

[3] On December 30, 2008, the United States Trustee amended the membership of the Committee to remove Franklin Bank, S.S.B. which was taken over by the FDIC.
[4] All dollar figures and hours set forth in this Motion should be considered approximations.

TCO 358,290,354v4 2-19-10

expenses in the amounts of $607,673.20 and $12,480.96, respectively, for a total award of $620,154.16. By Order entered on June 25, 2009, the Court approved WR's Third Interim Application, awarding fees and expenses in the amount of $620,003.02. During the period January 1, 2009 through April 30, 2009, WR's Third Interim Application indicates that timekeepers at WileyRein billed 1,565.8 hours.

11.    On August 28, 2009, WileyRein filed its Fourth Interim Application for Payment of Fees and Costs as Counsel for the Trustee for the three (3) month period from May 1, 2009 through July 31, 2009 ("WR's Fourth Interim Application") seeking allowance of fees and expenses in the amounts of $388,501.07 and $3,837.22, respectively, for a total award of $392,338.29. By Order entered on September 22, 2009, the Court approved WileyRein's Fourth Interim Application, awarding fees and expenses in the amount of $392,338.29. During the period May 1, 2009 through July 31, 2009, WR's Fourth Interim Application indicates that timekeepers at WileyRein billed 1,053.0 hours.

12.    On December 18, 2009, WileyRein filed its Fifth Interim Application for Payment of Fees and Costs as Counsel for the Trustee for the three (3) month period from August 1, 2009 through October 31, 2009 ("WR's Fifth Interim Application") seeking allowance of fees and expenses in the amounts of $551,885.78 and $4,791.81, respectively, for a total award of $556,677.59. By Order entered on January 15, 2010, the Court approved, in part, WR's Fifth Interim Application, awarding fees and expenses in the amount of $446,300.43 and scheduling a hearing on a 20% holdback of WileyRein's fees on February 2, 2010. During the period August 1, 2009 through October 31, 2009, WR's Fifth Interim Application indicates that timekeepers at WileyRein billed 1,373.6 hours.

13.    WileyRein has billed $2,329,104.22 and received payments totaling $2,185,687.50[5] on account of its approved fees and expenses as counsel for the Trustee in

---

[5] This amount includes the $1,739,387.19 stated as paid in WR's Fifth Interim Application plus the $446,300.43 awarded under WR's Fifth Interim Application. The Committee is assuming that WileyRein has been paid the $446,300.43 in fees

TCO 358,290,354v4 2-19-10

these cases.[6] During the approximately fifteen month period from July 21, 2008 through October 31, 2009, WR's Interim Applications indicate that timekeepers at WileyRein billed 5,930.2 hours.

### *The Trustee's Applications for Allowance of Compensation*

14.     On May 29, 2009, the Trustee filed his First Interim Application for Allowance of Compensation for the ten (10) month period from July 21, 2008 through May 14, 2009 (the "Trustee's First Interim Application") seeking allowance of compensation in the amount of $167,064.94. By Order entered on June 25, 2009, this Court granted the Trustee's First Interim Application awarding interim compensation in the total amount of $167,064.94. During the period July 21, 2008 through May 14, 2009 , the Trustee's First Interim Application indicates that the Trustee worked 876.1 hours, not including time billed as an attorney.

15.     On August 28, 2009, the Trustee filed his Second Interim Application for Allowance of Compensation for the three (3) month period from May 15, 2009 through August 20, 2009 (the "Trustee's Second Interim Application") seeking allowance of compensation in the amount of $200,631.86. By Order entered on September 22, 2009, this Court granted the Trustee's Second Interim Application awarding interim compensation in the total amount of $200,631.86. During the period May 15, 2009 through August 20, 2009, the Trustee's Second Interim Application indicates that the Trustee worked 124.9 hours, not including time billed as an attorney.

16.     On December 18, 2009, the Trustee filed his Third Interim Application for the four (4) month period from August 21, 2009 through December 18, 2009 seeking allowance of compensation in the amount of $174,283.96. The hearing on the Trustee's Third Interim Application was continued from January 11, 2009 until February 2, 2010 to be heard along with the continued hearing on the 20% holdback related to WR's Fifth Interim Application. During the

---

and expenses approved by this Court on January 15, 2010. This amount does not include the 20% holdback under WR's Fifth Interim Application, an additional $25,953.21 in approved fees that remain outstanding, as well as an additional $7,036.35 in unapproved fees and/or expenses.
[6] Only $32,245.03 of the amounts both sought and paid relates to expenses.

5

period August 21, 2009 through December 18, 2009, the Trustee's Third Interim Application indicates that the Trustee worked 129.3 hours, not including time billed as an attorney.

17.    To date, WileyRein has received payments totaling $367,696.80 on account of the allowance of the Trustee's approved compensation and, together with the payments made on account of its approved fees and expenses as counsel for the Trustee in these cases, WileyRein has been paid $2,553,384.30. If the amounts sought through the 20% holdback on WR's Fifth Interim Application and the Trustee's Third Interim Application are approved and paid, the total amount paid to WileyRein will be $2,838,045.42. Furthermore, during the period July 21, 2008 through December 18, 2009, the Trustee's Interim Applications indicate that the Trustee worked 1,130.3 hours, not including time billed as an attorney. Together with time billed by WileyRein as counsel for the Trustee, the hours accounted for by the Trustee and other timekeepers at WileyRein total 7,060.5.[7]

### The Committee's Concerns

18.    Following the filing of WR's Fourth Interim Application and the Trustee's Second Interim Application, the Committee authorized and directed counsel for the Committee to schedule a meeting with the Trustee and his counsel to privately discuss the Committee's concerns related to the overall level of compensation sought by WileyRein and the Trustee as well as several specific concerns, including, but not limited to, the number of WileyRein timekeepers working on the case, the number of WileyRein partners working on the case, and the overall number of hours worked by the Trustee and other timekeepers at WileyRein. In mid-September 2009, counsel for the Committee met privately with the Trustee and his counsel to express the Committee's concerns and to attempt to resolve those concerns amicably and in good faith. As a result of that meeting, the Committee felt that its concerns would be satisfactorily addressed by the Trustee and his counsel and would not be a cause for further

---

[7] By way of comparison, during the same timeframe the estates' three other primary sets of professionals, Marcher Consultants, McGuireWoods LLP, and Protiviti have billed 2,690.3, 2,694.5, and 5,313.5 hours, respectively, for total awarded compensation, including, for the purposes of this Motion, de minimis expenses, in the amounts of $489,450.71, $1,143,730.58, and $1,299,377.15, respectively.

TCO 358,290,354v4 2-19-10

concern going forward.

19.    Surprisingly and disappointingly, notwithstanding the September meeting between the Trustee, counsel for the Trustee and counsel for the Committee, the total amount of compensation sought by WileyRein in WR's Fifth Interim Application and the Trustee in the Trustee's Third Interim Application was significantly higher, by $137,036.81,[8] than the total amount sought in WR's Fourth Interim Application and the Trustee's Second Interim Application.

20.    Upon review of WR's Fifth Interim Application and the Trustee's Third Interim Application, the Committee requested that the Trustee agree that the January 11, 2009 hearings on both applications be continued until the February 12, 2010 omnibus hearing date and also requested WileyRein's work-in-progress ("WIP") figures for the months of November and December 2009 so that it could review the compensation sought by WR's Fifth Interim Application and the Trustee's Third Interim Application in light of WileyRein's November and December 2009 WIP and so that the Committee could make an informed decision on what compensation the Committee believed was reasonable and appropriate under the circumstances.  The Trustee refused the Committee's request.

21.    In a continued effort to resolve the Committee's concerns amicably and in good faith, the Committee agreed to allow WileyRein to seek 80% of its fees requested in its Fifth Interim Application on an interim basis while continuing the hearing on the additional 20% as well as the hearing on the Trustee's Third Interim Application until February 2, 2010 so that the Trustee, counsel for the Trustee, counsel for the Committee, and members of the Committee could meet to try and resolve the Committee's concerns.  Based upon the conflicting schedules of members of the Committee and Committee counsel, the parties were unable to meet prior to the February 2, 2010 hearing date.

22.    Unable to meet prior to the February 2, 2010 hearing date and based upon its

---

[8] The total fees requested in WR's Fifth Interim Application were $163,384.71 higher than the total fees requested in WR's Fourth Interim Application and the total commission requested in the Trustee's Third Interim Application was $26,347.90 less than the commissions requested in the Trustee's Second Interim Application.

7

serious and continuing concerns, the Committee filed its Motion to Continue Hearing on WileyRein LLP's Fifth Interim Application for Reimbursement of Fees and Costs as Counsel for the Trustee and Chapter 11 Trustee H. Jason Gold's Third Interim Application for Allowance of Compensation in order to allow for additional time for the Trustee, counsel for the Trustee, counsel for the Committee, and members of the Committee to meet and attempt to resolve the Committee's concerns amicably and in good faith without the need to file a formal written objection. Notwithstanding the Committee's strong preference not to have to file a formal written objection with the Court, but rather to continue and try to work out its concerns with the Trustee and the Trustee's counsel on a private and informal basis, the Trustee specifically requested that the Court set an objection deadline for the Committee, thereby necessitating the filing of this Objection. At the February 2, 2010 hearing, this Court continued the hearings on WR's Fifth Interim Application and the Trustee's Third Interim Application until March 12, 2010 and set February 19, 2010 as the objection deadline.

## APPLICABLE LAW

23.     Compensation of bankruptcy professionals is governed by Section 330(a) of the Bankruptcy Code. This section provides that the Court may award "reasonable compensation for actual, necessary services rendered by" the professional, and award "reimbursement for actual, necessary expenses." 11 U.S.C. §§ 330(a)(1)(A), (B). In determining the amount of reasonable compensation to be awarded to a professional, the Court "shall consider the nature, the extent, and the value of such services, taking into account all relevant factors . . . ." 11 U.S.C. § 330(a)(3). A non-exclusive list of the relevant factors is:

   (a)    The time spent on such services;

   (b)    The rates charged for such services;

   (c)    Whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, the bankruptcy case;

   (d)    Whether the services were performed within a reasonable amount of time commensurate with the complexity,

8

importance, and nature of the problem, issue, or task addressed;

> (e)     With respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (f)     Whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under the Bankruptcy Code.

See 11 U.S.C. § 330(a)(3)(A) - (F). Finally, under the statute, the Court may not allow compensation for unnecessary duplication of services, services that were not reasonably likely to benefit the debtor's estate, or services that were not necessary to the administration of the estate. See 11 U.S.C. § 330(4)(A).

24.     Compensation of chapter 11 trustees is governed by Section 326(a) of the Bankruptcy Code. This section provides that:

> (a)     In a case under chapter 7 or 11, the court may allow reasonable compensation under section 330 of this title of the trustee for the trustee's services, payable after the trustee renders such services, not to exceed 25 percent on the first $5,000 or less, 10 percent on any amount in excess of $5,000 but not in excess of $50,000, 5 percent on any amount in excess of $50,000 but not in excess of $1,000,000, and reasonable compensation not to exceed 3 percent of such moneys in excess of $1,000,000, upon all moneys disbursed or turned over in the case by the trustee to parties in interest, excluding the debtor, but including holders of secured claims.

11 U.S.C. § 326(a). Additionally, 11 U.S.C. § 330(a)(7) provides that "[i]n determining the reasonable amount of compensation to be awarded to a trustee, the court shall treat such compensation as a commission, based on section 326."

## THE COMMITTEE'S OBJECTIONS

25.     Applying the standards set forth in sections 326(a) and 330(a) of the Bankruptcy Code, the Committee objects to WR's Fifth Interim Application and the Trustee's Third Interim Application on the following grounds: (1) the overall amount of compensation sought by WileyRein and the Trustee is excessive and unreasonable; (2) the fees sought related to the

9

Trustee's motion to dismiss the appeal of this Court's ruling that the Trustee holds the proceeds from the sale of the property commonly known as 5335 Summit Drive, Fairfax, Virginia free and clear of the equitable claims of the objecting banks as equitably moot should not be allowed; and (3) WileyRein and the Trustee should not both be allowed compensation for the liquidation of real property that provides little or no net benefit to the Debtors' bankruptcy estates.

## The Overall Amount of the Compensation Sought by WileyRein and the Trustee is Excessive and Unreasonable

26.     The overall amount of the compensation sought by WileyRein and the Trustee is excessive and unreasonable for several reasons. First, as of the date of this Objection, WileyRein has requested compensation in the amount of $2,329,104.22 on account of its fees and expenses as counsel to the Trustee[9] and the Trustee has sought additional commissions in the amount of $541,980.76, for a combined total of $2,838,045.42 in compensation. In comparison, the total amount of fees and expenses sought by the four (4) other estate professionals for the same time period combined totals $2,954,588.66, of which $489,450.71 is attributable to the work of Marcher Consultants as operations manager to the Trustee.[10] Given the division of labor in these cases amongst the various estate professionals, the total amount of compensation sought by WileyRein and the Trustee should not, as it does, significantly exceed the total amount of compensation sought by both McGuireWoods and Protiviti combined, especially given that a significant amount of Protiviti's work has also been conducted on behalf of the Trustee.

27.     Second, on a month-by-month basis, WileyRein's fees have remained relatively steady, despite various lulls in activity throughout the case and a continuing reduction in the number of properties in the estates' real estate portfolio as the case has progressed. For example, excluding the Trustee's commission, WileyRein has billed no less than $128,000 per

---

[9] Only $32,245.03 of the amounts both sought and paid relates to expenses.

[10] As stated above, the hours accounted for by the Trustee and the time billed by other timekeepers at WileyRein as counsel for the Trustee total 7,060.5 hours. Marcher Consultants has billed 2,690.3 hours in its role as operations manager to the Trustee. The number of hours for the Trustee and these Trustee related professionals, not including Protiviti, totals 9,750.8 hours.

TCO 358,290,354v4 2-19-10

month and has averaged more than $150,000 per month; including the Trustee's fees, the

average fees sought by WileyRein increases to over $180,000 per month. Notably, the total

amount of compensation sought by WileyRein in WR's Fifth Interim Application and the Trustee

in the Trustee's Third Interim Application was significantly higher, by $137,036.81, than the total

amount of compensation sought by WileyRein in WR's Fourth Interim Application and the

Trustee's Second Interim Application. Specifically, the total fees requested in WR's Fifth Interim

Application were $163,384.71 higher than the total fees requested in WR's Fourth Interim

Application, while the total commission requested in the Trustee's Third Interim Application was

$26,347.90 less than the commissions requested in the Trustee's Second Interim Application.

The following chart breaks down the fees and commissions sought by WileyRein and the

Trustee, respectively, on a month-by-month basis after dividing the total amount of

compensation sought per application period by the number of months accounted for during a

particular application period.[11]

| Time Period | WR Application | Trustee Application | WR Fees | Trustee's Commission | Total |
|---|---|---|---|---|---|
| Jul-08 | 1st | 1st | $ 45,534.08 | $ 6,045.11 | $ 51,579.19 |
| Aug-08 | 1st | 1st | $ 128,323.32 | $ 17,036.23 | $ 145,359.55 |
| Sep-08 | 2nd | 1st | $ 141,963.75 | $ 17,036.23 | $ 158,999.98 |
| Oct-08 | 2nd | 1st | $ 141,963.75 | $ 17,036.23 | $ 158,999.98 |
| Nov-08 | 2nd | 1st | $ 141,963.75 | $ 17,036.23 | $ 158,999.98 |
| Dec-08 | 2nd | 1st | $ 141,963.75 | $ 17,036.23 | $ 158,999.98 |
| Jan-09 | 3rd | 1st | $ 151,918.30 | $ 17,036.23 | $ 168,954.53 |
| Feb-09 | 3rd | 1st | $ 151,918.30 | $ 17,036.23 | $ 168,954.53 |
| Mar-09 | 3rd | 1st | $ 151,918.30 | $ 17,036.23 | $ 168,954.53 |
| Apr-09 | 3rd | 1st | $ 151,918.30 | $ 17,036.23 | $ 168,954.53 |
| May-09 | 4th | 1st & 2nd | $ 129,500.36 | $ 42,145.72 | $ 171,646.08 |
| Jun-09 | 4th | 2nd | $ 129,500.36 | $ 62,824.12 | $ 192,324.48 |
| Jul-09 | 4th | 2nd | $ 129,500.36 | $ 62,824.12 | $ 192,324.48 |
| Aug-09 | 5th | 2nd & 3rd | $ 183,961.92 | $ 56,245.82 | $ 240,207.74 |
| Sep-09 | 5th | 3rd | $ 183,961.92 | $ 44,285.27 | $ 228,247.19 |
| Oct-09 | 5th | 3rd | $ 183,961.92 | $ 44,285.27 | $ 228,247.19 |
| Nov-09 | n/a | 3rd | $ - | $ 44,285.27 | $ 44,285.27 |
| Dec-09 | n/a | 3rd | $ - | $ 25,714.03 | $ 25,714.03 |
| | | Total: | $2,289,772.44 | $ 541,980.80 | $2,831,753.24 |

[11] The figures set forth in the chart exclude expenses and are based upon the fees and commissions approved by this Court on an interim basis that were requested by WR's First through Fourth Interim Applications and the Trustee's First and Second Interim Applications, respectively. The figures utilized for WR's Fifth Interim Application and the Trustee's Third Interim Application are based upon the amount of fees and commissions requested.

TCO 358,290,354v4 2-19-10

28.     Third, WileyRein has consistently staffed this case with too many timekeepers and has failed to properly push the work down from senior lawyers to more junior lawyers and paraprofessionals resulting in significantly higher legal fees to the Debtors' bankruptcy estates. For example, rather than using a small core group of professionals, with the exception of WR's First Interim Application period, WileyRein has utilized at least eleven timekeepers per application period, including twelve timekeepers during the three (3) month period accounted for by WR's Fifth Interim Application.[12] In addition, approximately $1,469,000 or 64% of the approximately $2,296,000 in fees requested in WR's First Interim Application through the Fifth Interim Application are attributable to five (5) partners and one (1) of counsel while only approximately $826,000 or 36% of the approximately $2,296,000 in fees requested in WR's First Interim Application through the Fifth Interim Application are attributable to seven (7) associates, three (3) summer associates, and five (5) paralegals.

### The Fees Sought by WileyRein as Counsel to the Trustee that Relate to the Trustee's Motion to Dismiss Appeal as Equitably Moot Should Not be Approved

29.     On August 24, 2009, the Trustee filed his Motion to Dismiss Appeal as Equitably Moot and memorandum in support of same in the United States District Court for the Eastern District of Virginia (together, the "Equitable Mootness Motion"), which sought to dismiss the appeal of several banks related to this Court's ruling that that the Trustee holds the proceeds from the sale of the property commonly known as 5335 Summit Drive, Fairfax, Virginia free and clear of the equitable claims of the objecting banks. On September 11, 2009, the District Court denied the Equitable Mootness Motion.

30.     The Trustee filed the Equitable Mootness Motion, notwithstanding his previously arguing before this Court successfully that the use of the proceeds of the sale of 5335 Summit Drive would not necessarily prevent the objecting banks from recovering the sale proceeds if the

---

[12] During the application periods covered by Wiley Rein's First through Fifth Interim Applications, Wiley Rein utilized 8, 11, 12, 14, and 12 timekeepers, respectively.

TCO 358,290,354v4 2-19-10

objecting banks were to win their appeal and, therefore, a stay of the use of the sale proceeds pending appeal should be denied.

31.     The fees and expenses associated with drafting and arguing the Equitable Mootness Motion, which was inconsistent with the Trustee's prior argument before this Court, should not be allowed.  A review of the time entries accompanying WR's Fifth Interim Application, indicates that at least 59.0 hours and $33,446.00 in fees were spent preparing for and arguing the Equitable Mootness Motion.  Also, there may be additional time entries related to the preparation and argument of the Equitable Mootness Motion, because it is unclear whether the time entries related to preparation for and argument of the appeal itself each sufficiently differentiate time spent working on the appeal itself from the time entries related to the Equitable Mootness Motion.

### WileyRein and the Trustee Should Not Both Be Compensated for the Liquidation of Property that Provides Little or No Benefit to the Estates

32.     WileyRein and the Trustee should not both be entitled to compensation based . upon fees incurred as counsel to the Trustee and commissions as Trustee, respectively, for the liquidation of real property, when payment of both hourly fees and a commission would prevent the estates from receiving a net cash gain, following the payment of secured creditors' claims and other fees and expenses related to the liquidation of such real property.  For example, pursuant to this Court's Order Authorizing the Sale of 12515 Chronical Drive, Fairfax, Virginia Free and Clear of Liens and Other Interests (the "Order Authorizing the Sale of 12515 Chronical Drive"), the estate received only 3%, or $25,500, of the $850,000 in sale proceeds of the property "as compensation for the Trustee's costs and expenses in maintaining [12515 Chronical Drive] and in exchange for a release of the Trustee's claims pursuant to 11 U.S.C. § 506(c)." See Order Authorizing the Sale of 12515 Chronical Drive, para. 6 (Dkt. Entry 1098).  If the Trustee seeks full commission based upon the distribution of the sale proceeds related to the liquidation of 12515 Chronical Drive, the amount will equal approximately the same $25,500. However, in addition to the Trustee's commission,  the time entries attached to WR's Fifth

TCO 358,290,354v4 2-19-10

Interim Application, which only accounts for time billed between August 1, 2009 and October 31, 2009, indicate WileyRein billed and is seeking approval of payment of approximately $13,665.50 related to the sale of 12515 Chronical Drive which does not include all attorneys fees related to the sale of 12515 Chronical Drive incurred by WileyRein both before August 1, 2009 and after October 31, 2009, because this Court's Order approving the sale of 12515 Chronical Drive was entered on November 20, 2009 and the sale closed on December 31, 2009, two months after the final time accounted for by WR's Fifth Interim Fee Application. [13]

## RESERVATION OF RIGHTS

33.     The Committee has not yet had the opportunity to examine WileyRein LLP's Sixth Interim Application for Reimbursement of Fees and Costs as Counsel for the Trustee ("WR's Sixth Interim Application") or Chapter 11 Trustee H. Jason Gold's Fourth Interim Application for Allowance of Compensation (the "Trustee's Fourth Interim Application"), which the Committee expects to be filed on the same day as this Objection, and reserves the right to assert further objections to WR's Fifth Interim Application and the Trustee's Third Interim Application after the Committee has been able to review and analyze WR's Sixth Interim Application and the Trustee's Fourth Interim Application.

## NOTICE

34.     Notice of this Objection has been provided to all parties required by the Order Granting Trustee's Motion for Entry of a Case Management Order Establishing (I) Limited Notice Procedures, (II) Omnibus Hearing Dates, and (III) Procedures for Scheduling Hearings. Notice of this Objection has also been provided to the Trustee, counsel for the Trustee and the United States Trustee by e-mail.

## NO PRIOR REQUEST

35.     No prior request for the relief sought herein has been made to this Court in these

---

[13] Upon information and belief, a similar analysis is true with respect to Trustee's recent sales of 10611 Judicial Drive, Fairfax, Virginia and the Stone Road Lots located in Centreville, Virgnia.

14

bankruptcy cases.

**WHEREFORE**, the Committee requests that this Court enter an order (i) sustaining its objections to WileyRein LLP's Fifth Interim Application for Reimbursement of Fees and Costs as Counsel for the Trustee and Chapter 11 Trustee H. Jason Gold's Third Interim Application for Allowance of Compensation as set forth herein, and (ii) granting the Committee such other and further relief as is just and proper.

Dated: February 19, 2010

/s/ Lawrence E. Rifken
Lawrence E. Rifken, Esq. (VSB No. 29037)
John T. Farnum, Esq. (VSB No. 74075)
GREENBERG TRAURIG, LLP
1750 Tysons Boulevard, Suite 1200
McLean, Virginia 22102-4215
(703) 749-1300

*Counsel to the Official Committee of
Unsecured Creditors of Vijay K. Taneja*, et al.

TCO 358,290,354v4 2-19-10

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 19th day of February, 2010, a copy of the foregoing Objection was sent by electronic mail and first class U.S. mail, postage prepaid, to:

H. Jason Gold
Alexander M. Laughlin
WILEY REIN LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA 22102
hgold@wileyrein.com
alaughlin@wileyrein.com

/s/ John T. Farnum
John T. Farnum

*Counsel to the Official Committee of*
*Unsecured Creditors of Vijay K. Taneja, et al.*

*TCO 358,290,354v4 2-19-10*