UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:                                    )
                                          )
        VIJAY K. TANEJA *et al.*          )        Case No. 08-13293-SSM
                                          )        Chapter 11 (Jointly Administered)
                        Debtors           )

## MEMORANDUM OPINION

Before the court is the motion of Specialized Loan Servicing, LLC, as attorney in fact for

U.S. Bank National Association, as trustee for Terwin Mortgage Trusts ("U.S. Bank") to vacate

an order entered more than a year ago approving the sale of real estate located at 4621 Holly

Avenue, Fairfax, Virginia, free and clear of liens.  U.S. Bank, whose deed of trust had been

released prior to the bankruptcy filing by what appears to have been a false certificate of

satisfaction, was not served with, or given notice of, the sale motion, and the proceeds of the sale

(less escrowed sums to satisfy disputed mechanic's liens) were paid to Virginia Commerce Bank

on account of three deeds of trust securing loans it had made.  The motion to vacate the sale

order  is opposed by the chapter 11 trustee; by Ann DiMiero and Marshall Vosteen, the

purchasers of the property; and by Virginia Commerce Bank.

<u>Background</u>

On June 9, 2008, Vijay K. Taneja ("the debtor") and four companies controlled by him,

including a mortgage loan originator known as Financial Mortgage, Inc. ("FMI"), filed voluntary

1

petitions in this court for reorganization under chapter 11 of the Bankruptcy Code.[1]  H. Jason

Gold was appointed as chapter 11 trustee in all five cases, which are being jointly administered.

On June 18, 2008, U.S. Bank filed a proof of claim (Claim No. 1) asserting a secured claim in

the amount of $458,449.27.  Attached to the proof of claim were copies of a deed of trust note

and deed of trust executed by Taneja, both of which identified the collateral as real property

located at 4621 Holly Avenue, Fairfax, Virginia.  That same day, a "request for special notices

and services [*sic*]" was filed.  Although the docket entry states that the request was filed by "U.S

Bank National Assciation [*sic*], as Trustee for Terwin Mortgage Trust 2005-12ALT,

Asset-Backed Certificates, Series 2005-12ALT, without recourse, Specialize [*sic*] Loan

Servicing, LLC," the actual notice does not mention either U.S. Bank or Terwin and identifies

only Specialized Loan Servicing, LLC, as the "creditor" and Moss Codilis, L.L.P. as its agent for

service of notice.  Aside from filing the proof of claim and request for notices, Specialized, U.S.

Bank, and Terwin took no other action in the case with respect to the property, such as filing a

motion for relief from the automatic stay.

Taneja acquired title to 4621 Holly Avenue by deed dated May 16, 2005.

Contemporaneously with the purchase, deeds of trust were recorded securing a $480,000 loan

and a $120,000 loan, both made by FMI.  The deed of trust at issue here is dated eight days later

(May 24, 2005).  It secures $480,000 and contains language that the loan constitutes a refinance

of an existing debt with the same lender.  Like the original deed of trust, it identifies FMI as the

lender and Mortgage Electronic Registration Systems, Inc. ("MERS")—as nominee for the

---

[1]  The four companies were Elite Entertainment, Inc., Case No. 08-13286-SSM; Financial
Mortgage, Inc., Case No. 08-13287-SSM; NRM Investments, Inc., Case No. 08-13290-SSM; and
Taneja Center, Inc., Case No. 08-13292-SSM.

lender—as the beneficiary.  The May 24, 2005, loan was immediately sold into the secondary

market and was ultimately assigned to U.S. Bank as trustee for a securitized mortgage pool.  No

assignments of the deed of trust were recorded in the land records.  However, U.S. Bank asserts

that the identity of the current holder, or at least servicer, of the loan could be obtained from an

Internet web site maintained by MERS using the "mortgage identification number" that appears

on the first page of the deed of trust.  In any event, in June and July 2005, Taneja, as president of

FMI, signed two certificates of satisfaction purporting to release the deed of trust.  Oddly, *no*

release of the original (May 16, 2005) $480,000 deed of trust was recorded prior to the

bankruptcy filing.  Contemporaneously with the releases, Taneja obtained loans from Virginia

Commerce Bank ("VCB") secured by three deeds of trust against the property totaling

$2,750,000.

On September 2, 2009, the trustee filed a motion to approve the sale of the property to

DiMiero and Vosteen free and clear of liens for $800,000.  The motion represented that the

chapter 11 trustee had obtained a title report reflecting three VCB deeds of trust, two mechanic's

liens, and two deeds of trust in favor of FMI for which releases had been recorded with incorrect

recording references for the original instruments.  Notice of the motion was mailed or

electronically transmitted to a number of parties, but not to Specialized.[2]  On September 25,

2009, an order was entered approving the sale of the property to DiMiero and Vosteen free and

clear of liens, with the order making a finding under § 363(m), Bankruptcy Code, that they were

good faith purchasers.  The order was amended on October 20, 2009, to address a criminal

---

[2]  Notice of the motion was, however, sent to counsel representing U.S. Bank with respect to a
different loan.

3

restitution lien that had been filed by the United States in connection with Taneja's federal

criminal conviction for money laundering, but the substantive provisions otherwise remained the

same.  The closing took place on November 3, 2009.  In connection with the sale, someone—no

one seems to know who—recorded a dummied-up certificate of satisfaction of the original (May

16, 2005) $480,000 deed of trust.  The report of sale filed by the trustee reflects that $704,401 of

the proceeds were paid to Virginia Commerce Bank and $40,465.86 into an escrow for the

mechanic's liens.  After payment of commission and closing costs, there were no proceeds for

the bankruptcy estate.  The present motion to vacate was filed on November 24, 2010.

<u>Discussion</u>

I.

Rule 9024, Federal Rules of Bankruptcy Procedure, incorporates—with certain

limitations not relevant here—Rule 60, Federal Rules of Civil Procedure.  Rule 60 in turn allows

a court to grant relief from a final judgment or order on various grounds, including that "the

judgment is void."  Fed.R.Civ.P. 60(b)(4).  As the Supreme Court has recently explained in the

context of a bankruptcy court order,

> [A] void judgment is one so affected by a fundamental infirmity that the infirmity
> may be raised even after the judgment becomes final.  The list of such infirmities
> is exceedingly short; otherwise, Rule 60(b)(4)'s exception to finality would
> swallow the rule.  "A judgment is not void," for example, "simply because it is or
> may have been erroneous." . . . Instead, Rule 60(b)(4) applies only in the rare
> instance where a judgment is premised either on a certain type of jurisdictional
> error or on a violation of due process that deprives a party of notice or the
> opportunity to be heard.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. —, 130 S.Ct. 1367, 1377, 176 L.Ed.2d 158

(2010) (internal citations omitted).

II.

4

That the trustee's failure to provide Specialized with notice of the proposed sale constitutes a serious procedural error is clear.  Specialized requested copies of all notices, and the court's order limiting notices in the case required that notice be sent to any party that had filed requests for notices.  There is also a larger issue.  Rule 6004(c) requires that a motion for authority to sell property free and clear of liens or other interests must "be served on the parties who have liens or other interests in the property to be sold."  By the time the motion to sell had been filed, the trustee had actual notice that Taneja had engaged in a number of fraudulent mortgage loan practices, including the fraudulent release of mortgage loans that had been sold into the secondary market.  *See HSBC Bank USA, N.A. v. Gold (In re Taneja)*, 427 B.R. 109 (Bankr. E.D. Va. 2010).[3]  Given the variety and pervasiveness of Taneja's fraudulent activity, it is astonishing, to say the least, that the trustee would rely solely on a title report in terms of giving notice to possible lien holders, and would not, for example, review the proofs of claim and other pleadings filed in the case to determine if there were parties other than those reflected in the land records with arguable claims.  To be sure, the trustee's strong-arm powers might well, as in *HSBC,* ultimately allow him to prevail over parties with unrecorded or falsely-released deeds of trust, but due process is not measured by expectations as to the final outcome but by adequate notice and an opportunity to be heard.

---

[3]  The complaint in *HSBC v. Gold*—which outlined precisely the sort of fraud of which U.S. Bank appears to have been a victim—was filed on February 24, 2009, approximately six months prior to the trustee's motion to sell the Holly Avenue property.

III.

Be that as it may, relief under Rule 60(b)(4) vacating the sale order would be appropriate only if there were a reasonable likelihood that U.S. Bank—had it been properly served with the motion—could have successfully objected to the sale of the property free and clear of its lien. The answer seems clear that it could not.  Section 363(f)(4) allows a trustee to sell property free and clear of an interest if "the interest is in bona fide dispute."  Given the recorded certificate of satisfaction, U.S. Bank's lien interest was plainly in bona fide dispute.  For that reason, a sale free and clear of its deed of trust could have been approved, with the lien of the deed of trust attaching to the proceeds of sale, thereby leaving for another day the merits of the claimed lien.

This, in turn, squarely raises the question of whether, under this court's decision in *HSBC v. Gold*, the trustee could have avoided U.S. Bank's falsely-released deed of trust under his strong-arm powers as a bona-fide purchaser for value.  In *HSBC*, this court concluded that under Virginia law, a bona fide purchaser would prevail over the holder of a falsely-released deed of trust.  U.S. Bank, however, argues that the availability of the MERS web site would have provided constructive notice of U.S. Bank's interest in the supposedly-released loan, such that a bona fide purchaser could not have relied on the certificate of satisfaction.  The court does not concur.  No Virginia statute, and no reported decision in Virginia, has recognized a privately-maintained database—which is all the MERS web site is—as an extension of the land records system or as providing constructive notice of mortgage assignments.  Nor is there any evidence that title examiners in Virginia, as a matter of custom or practice, review the MERS web site to verify the validity of recorded releases.

6

The only real difference, but nevertheless a significant one, between the noteholder in *HSBC* and U.S. Bank in this case is that the deed of trust securing the loan that was purportedly refinanced by the loan that U.S. Bank purchased had not yet been released of record at the time the bankruptcy case was filed.  Under the Virginia doctrine of equitable subrogation, as recognized and applied by this court in *Mayer v. United States (In re Reasonover)*, 236 B.R. 219, 231-32 (Bankr. E.D. Va. 1999), *vacated and remanded on other grounds,* 238 F.3d 414 (4th Cir. 2000) (unpublished table decision), *op. on remand*, 2001 WL 1168181, 2001 Bankr. LEXIS 2109 (Bankr. E.D. Va., April 16, 2001), U.S. Bank could have claimed the benefit of the May 16, 2005, deed of trust to the extent the loan it purchased had paid off the loan secured by the earlier, and still unreleased, deed of trust.  On the present record, it is by no means certain that U.S. Bank could show that the loan it purchased actually paid off the earlier loan (or, for that matter, that the earlier loan had actually been made).  In a number of other adversary proceedings filed by the trustee, it is alleged that Taneja, though FMI, operated what was essentially a Ponzi scheme, with the proceeds of new loans not necessarily going to pay off the prior loans on a particular parcel.  But even if U.S. Bank might have an uphill battle establishing its equitable subrogation claim, elementary due process requires that it be given the opportunity to do so.

IV.

A determination that U.S. Bank's due process rights were infringed when it was not given notice of the proposed sale does not, however, require that the sale itself be set aside.  As noted, even if U.S. Bank had been given notice and had objected, the court could—and likely would—have approved a sale free and clear of U.S. Bank's disputed lien.  What would have

been different is that the sale order would have expressly provided for all the liens, including

U.S. Bank's disputed lien, to attach to the proceeds of sale without alteration of priority, and

further proceedings would have been set to adjudicate the validity and relative priority of those

liens.  That being the case, no basis has been shown for setting aside the sale to DiMiero and

Vosteen or for calling into question their title to the property.  This is particularly so given the

finding of good faith made in the sale order.  Under § 363(m), Bankruptcy Code, "[t]he reversal

or modification on appeal of an authorization . . . of a sale . . . of property does not affect the

validity of a sale . . . under such authorization to an entity that purchased . . . such property in

good faith, whether or not such entity knew of the pendency of the appeal, unless such

authorization and such sale . . . were stayed pending appeal."  Although § 363(m) speaks

specifically of appeal and does not specifically address a motion to vacate a sale based on a

failure to give adequate notice, the policy favoring the title of a purchaser at a bankruptcy sale is

very strong, and only the most exceptional circumstances would justify setting such a sale aside.

No such circumstances are present in this case.

        Instead, the court determines that the appropriate remedy is to vacate only that portion of

the sale order directing payment of the sales proceeds to VCB, and to grant relief from the sale

order by providing that any non-avoidable lien that U.S. Bank may have shall attach to the

proceeds of sale, whether or not subsequently disbursed by the trustee to VCB or other lien

claimants.  Such relief will be conditioned upon U.S. Bank promptly commencing an adversary

proceeding to determine the validity, priority, and extent of its lien.  VCB must obviously be

made a party to the action, since a ruling establishing the validity of U.S. Bank's lien would

require the trustee to demand repayment from VCB of any sales proceeds previously paid to it.

A separate order will be entered consistent with this opinion.


Date: _____          _____
                                      Stephen S. Mitchell
Alexandria, Virginia                  United States Bankruptcy Judge


Copies to:

Andrew L. Cole, Esquire
Franklin & Prokopik
The B&O Building
Two N. Charles St., Ste. 600
Baltimore, MD 21201
Counsel for U.S. Bank National Association

H. Jason Gold, Esquire
Wiley Rein, LLP
7925 Jones Branch Drive, Suite 6200
McLean, VA  22101
Chapter 11 trustee

James Bruce Davis, Esquire
Bean, Kinney & Korman, P.C.
2300 Wilson Blvd., 7th Floor
Arlington, VA  22201
Counsel for Virginia Commerce Bank

John E. Rinaldi, Esquire
Walsh, Colucci, Lubeley, Emrich & Walsh, P.C.
4310 Prince William Parkway, Suite 300
Prince William, VA 22192
Counsel for Ann DiMiero and Marshall Vosteen