## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **Vijay K. Taneja, et al.,**[1] | ) | Case No. 08-13293-SSM |
| | ) | |
| Debtors. | ) | Jointly Administered |
| | ) | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION OF THE ESTATES OF
## VIJAY K. TANEJA AND AFFILIATED DEBTORS

<table>
<tr><td align="center"><b>WILEY REIN LLP</b></td><td align="center"><b>GREENBERG TRAURIG, LLP</b></td></tr>
<tr><td align="center">H. Jason Gold, Esq.<br>Valerie P. Morrison, Esq.<br>Alexander M. Laughlin, Esq.<br>7925 Jones Branch Drive, Suite 6200<br>McLean, Virginia 22102</td><td align="center">Lawrence E. Rifken, Esq.<br>John T. Farnum, Esq.<br>1750 Tysons Boulevard<br>Suite 1200<br>McLean, Virginia  22102-4215</td></tr>
<tr><td align="center"><i>Counsel to the Chapter 11 Trustee</i></td><td align="center"><i>Counsel to the Official Committee of<br>Unsecured Creditors</i></td></tr>
</table>

Dated: McLean, Virginia
June 16, 2011

---

[1] The Debtors in these cases are: Elite Entertainment, Inc. (08-13286-SSM), Financial Mortgage, Inc. (08-13287-SSM), NRM Investments, Inc. (08-13290-SSM), Taneja Center, Inc. (08-13292-SSM)(collectively the "Affiliated Debtors"), and Vijay K. Taneja (08-13293-SSM).

# TABLE OF CONTENTS

Page

I. DEFINITIONS ........................................................................................................ 1

II. RULES OF INTERPRETATION ......................................................................... 10

III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS ...................... 11

    A.    Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims) ........................................................................................ 12

        1.    Allowed Administrative Expense Claims Other than Professional Fee Claims ....................................................................................... 12

        2.    Allowed Professional Fee Claims ........................................................ 12

        3.    Allowed Priority Tax Claims ................................................................ 13

    B.    Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims) ........................................................................................ 13

        1.    Administrative Expense Claims ........................................................... 13

        2.    Priority Tax Claims .............................................................................. 13

    C.    Classification and Treatment of Non-Tax Priority Claims (Class 1) .................... 14

    D.    Classification and Treatment of Secured Claims (Class 2) ................................. 14

    E.    Classification of and Treatment of General Unsecured Claims (Class 3) ............ 15

    F.    Classification and Treatment of Intercompany Claims (Class 4) ......................... 16

    G.    Classification and Treatment of Interests (Classes 5) ......................................... 16

    H.    Elimination of Classes ...................................................................................... 16

IV. ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS ................................................... 16

    A.    Impaired Classes to Vote .................................................................................. 16

    B.    Holders of Administrative Expense Claims and Priority Tax Claims .................. 17

    C.    Acceptance by Class of Creditors ...................................................................... 17

    D.    Cramdown ....................................................................................................... 17

V. PLAN IMPLEMENTATION ........................................................................... 17

    A.     Plan Objectives ................................................................... 17

    B.     Substantive Consolidation ................................................... 17

    C.     The Liquidation Trust ......................................................... 18

          1.     Formation of the Liquidation Trust ................................ 18

          2.     Funding of the Liquidation Trust ................................... 18

          3.     Rights and Powers of the Liquidation Trust .................. 19

    D.     Conclusion of Services of the Chapter 11 Trustee and the Creditors Committee ......................................................................... 19

    E.     Liquidating Trustee ............................................................. 20

          1.     Identity ........................................................................... 20

          2.     Responsibilities of Liquidating Trustee ........................ 20

          3.     Powers and Authority of Liquidating Trustee ............... 20

          4.     Retention of Professionals ............................................ 21

          5.     Liquidating Trustee Compensation ............................... 22

          6.     Successor Liquidating Trustee ...................................... 23

          7.     Termination of Liquidation Trust .................................. 23

          8.     Records .......................................................................... 23

    F.     The Monitoring Committee .................................................. 24

          1.     Formation and Responsibilities ..................................... 24

          2.     Retention of Professionals ............................................ 24

    G.     Indemnification ................................................................... 25

    H.     Provision for Treatment of Disputed Claims ....................... 26

          1.     Liquidating Trustee Standing ........................................ 26

          2.     Plan Reserves ................................................................ 26

I.    Distribution of Property Under the Plan ............................................................... 27

    1.    Source of Distributions ................................................................. 27

    2.    Manner of Cash Payments ........................................................... 27

    3.    Setoff and Recoupment................................................................ 27

    4.    Interest on Claims ........................................................................ 28

    5.    Withholding and Reporting Requirements .............................. 28

    6.    No *De Minimus* Distributions ................................................. 28

    7.    Fractional Dollars......................................................................... 28

    8.    No Distributions With Respect to Disputed Claims ................. 29

    9.    Undeliverable or Unclaimed Distributions ............................... 29

VI. LITIGATION .............................................................................................. 30

    A.    Preservation of Causes of Action and Defenses .................... 30

VII. EXCULPATION ......................................................................................... 31

    A.    Limitation of Liability in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Documents ...................................... 31

    B.    Injunction Against Suing the Chapter 11 Trustee, the Creditors' Committee, the Liquidation Trust, the Liquidating Trustee and the Monitoring Committee.......................................................... 32

VIII. OTHER PLAN PROVISIONS ................................................................. 33

    A.    Conditions to Confirmation ...................................................... 33

    B.    The Effective Date ........................................................................ 33

    C.    Executory Contracts and Unexpired Leases ........................... 33

        1.    Rejection of Executory Contracts and Unexpired Leases...................... 33

        2.    Bar Date for Rejection Damage Claims.................................... 33

    D.    Entry of a Final Decree ............................................................... 34

    E.    United States Trustee Fees and Reports................................... 34

F.    Post-Confirmation Status Reports............................................................................ 34

G.    Post-Effective Date Effect of Evidences of Claims............................................... 34

H.    Cancellation of Interests ........................................................................................ 34

I.    Nondischarge of the Debtors .................................................................................. 35

J.    Common Interest Agreement.................................................................................. 35

K.    No Recourse............................................................................................................ 35

L.    No Admissions........................................................................................................ 35

M.    Severability of Plan Provisions.............................................................................. 36

N.    Governing Law ....................................................................................................... 36

O.    Retention of Jurisdiction........................................................................................ 36

P.    Successors and Assigns........................................................................................... 37

Q.    Saturday, Sunday, or Legal Holiday ...................................................................... 37

R.    Plan Modification................................................................................................... 37

S.    Withdrawal of the Plan .......................................................................................... 37

IX. RECOMMENDATIONS AND CONCLUSION ................................................................ 37


Exhibit A      Vijay K. Taneja, et al.
               Liquidation Trust Agreement

## INTRODUCTION

H. Jason Gold, Chapter 11 Trustee (the "Chapter 11 Trustee") and the Official Committee of Unsecured Creditors (the "Creditors' Committee") propose the following chapter 11 plan of liquidation for Elite Entertainment, Inc., Financial Mortgage, Inc., NRM Investments, Inc., Taneja Center, Inc., and Vijay K. Taneja (each a "Debtor" and collectively, the "Debtors"). The Chapter 11 Trustee and the Creditors' Committee are the proponents of the Plan within the meaning of Bankruptcy Code section 1129. Reference is made to the Disclosure Statement, distributed contemporaneously herewith, for a discussion of (i) the Debtors' history, businesses and operations, (ii) a summary and analysis of this Plan, and (iii) certain related matters, including risk factors relating to the consummation of this Plan.  No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith, have been approved for use in soliciting acceptances and rejections of the Plan. Nothing in the Plan should be construed as constituting a solicitation of acceptances of the Plan unless and until the Disclosure Statement has been approved and distributed to all Holders of Claims and Interests to the extent required by Bankruptcy Code section 1125.  Subject to certain restrictions and requirements set forth in Bankruptcy Code section 1127 and Bankruptcy Rule 3019, the Chapter 11 Trustee and the Creditors' Committee reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its substantial consummation.

**ALL HOLDERS OF CLAIMS ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ CAREFULLY THE PLAN AND THE DISCLOSURE STATEMENT (INCLUDING ALL EXHIBITS THERETO), EACH IN ITS ENTIRETY, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.**

## I.  DEFINITIONS

The following terms (which appear in this Plan as capitalized terms), when used in this Plan, have the meanings set forth below:

**"Administrative Expense Claim"** means a claim for administrative costs or expenses that are allowable under Bankruptcy Code section 503(b) or 28 U.S.C. § 1930.  These costs or expenses may include: (a) actual, necessary costs and expenses of preserving the Debtors' Estates after the Petition Date; (b) Professional Fee Claims; (c) Administrative Tax Claims; and (d) fees or charges assessed against the Estates under 28 U.S.C. § 1930.

**"Administrative Expense Claims Bar Date"** means thirty (30) days after the Effective Date, with respect to Administrative Expense Claims, except for Professional Fee Claims, for services rendered or expenses incurred from June 9, 2008 through the Effective Date relating to or arising out of any period after the Petition Date.

**"Administrative Expense Claims Objection Date"** means the last day for filing an objection to any request for the payment of an Administrative Expense Claim other than a Professional Fee Claim, which shall be the later of (a) sixty (60) days after the Effective Date or (b) such other date specified in this Plan or ordered by the Bankruptcy Court.  The filing of a motion to extend the Administrative Expense Claims Objection Date shall automatically extend the Administrative Expense Claims Objection Date  until a Final Order is entered on such motion. In the event that such motion to extend the Administrative Expense Claims Objection

1

Date is denied by the Bankruptcy Court, the Administrative Expense Claims Objection Date shall be the later of the current Administrative Expense Claims Objection Date (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to extend the Administrative Expense Claims Objection Date.

"**Administrative Tax Claim**" means a Claim that is not an Allowed Secured Claim and that a government unit asserts against one or more of the Debtors either for taxes or for related interest or penalties for any tax period that, in whole or in part, falls within the period beginning on the Petition Date and ending on the Effective Date.

"**Advice and Consultation**" means that the (i) the Liquidating Trustee will seek consultation with and advice of the Monitoring Committee regarding all substantive and litigation issues and strategies in the case prior to any strategic decisions being made or employed, including consultation prior to the commencement of proceedings in each matter as well as ongoing consultation through settlement or other disposition (the "Consultation Matters"); and (ii) the Monitoring Committee will provide prompt and timely consultation and advice to the Liquidating Trustee and his counsel concerning Consultation Matters.  For purposes of this definition, all references to the term Monitoring Committee in either the Disclosure Statement or this Plan shall mean the Monitoring Committee and its counsel.  In addition to the foregoing, any Advice and Consultation with or notice to the Monitoring Committee's counsel shall be deemed to be Advice and Consultation with and notice to the Monitoring Committee, as applicable.  Also, any Advice and Consultation with the chairperson of the Monitoring Committee shall be deemed to be Advice and Consultation with the Monitoring Committee and its counsel.

"**Allowed Administrative Expense Claim**" means an Administrative Expense Claim that is allowed as set forth in Article III.A.1.

"**Allowed Claim**" means a Claim, other than an Administrative Expense Claim, (i) allowed by Final Order of the Bankruptcy Court, (ii) proof of which was timely filed on or before the Claims Bar Date or (iii) if no proof of Claim has been timely filed, which has been or hereafter is listed in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent, and in each such case in clauses (ii) and (iii) above, a Claim as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or a Final Order.  Unless otherwise specified in the Plan, an Allowed Claim does not include interest on the Claim accruing after the Petition Date.  Moreover, any Claim or portion of a Claim that was or is satisfied or released during the Cases is not an Allowed Claim.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim which the Debtors, the Liquidating Debtors, the Estates and/or the Liquidation Trust may hold against the Holder thereof, to the extent that such Claim may be set off pursuant to applicable law.

"**Allowed Class '**\*\*'** Claim**" means an Allowed Claim in the particular class described.

"**Assets**" means all assets of the Debtors' Estates including, but not limited to, "property of the estate" as described in section 541 of the Bankruptcy Code.

"**Available Cash**" means all Cash held by the Liquidation Trust on and after the Effective Date.  Available Cash shall not include the Cash in any of the Plan Reserve Accounts.

"**Avoidance Action**" means any Causes of Action arising under Bankruptcy Code sections 542, 543, 544, 547, 548, 549, 550, 551, 552, and 553 or under related state or federal statutes and common law, including without limitation all fraudulent conveyance laws, fraudulent transfer laws, and all non-bankruptcy laws vesting in creditors any and all rights to avoid, rescind, or recover on account of transfers, whether or not litigation is commenced to prosecute such Cause of Action.

"**Ballot**" means the Ballot for accepting or rejecting the Plan.

"**Ballot Date**" means the date set by the Bankruptcy Court by which all Ballots with respect to the Plan must be received.

"**Bankruptcy Code**" means title 11 of the United States Code, as now in effect or hereafter amended and as applicable to the Cases.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Eastern District of Virginia.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure.

"**Bankruptcy Schedules**" means the Schedules of Assets and Liabilities and Statement of Financial Affairs filed by each of the Debtors, as the same may have been amended from time to time.

"**Beneficiaries**" means Holders of Allowed Administrative Expense Claims, Allowed Priority Tax Claims, and Holders of Allowed Claims in Classes 1, 2, and 3 entitled to receive Distributions under the Plan.

"**Business Day**" means any day other than a Saturday, Sunday or a legal holiday (as defined in Bankruptcy Rule 9006(a)).

"**Case(s)**" means (a) when used with reference to a particular Debtor, the case under Chapter 11 of the Bankruptcy Code commenced by such Debtor in the Bankruptcy Court and (b) when used with reference to all Debtors, the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors in the Bankruptcy Court.

"**Cash**" means cash or cash equivalents including, but not limited to, bank deposits, checks or other similar items.

"**Causes of Action**" means any and all claims, demands, rights, actions, causes of action and suits of the Debtor(s), the Liquidating Debtors, the Estates, the Liquidating Trust, the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee or the Monitoring Committee, of any kind or character whatsoever, known or unknown, suspected or unsuspected, matured or unmatured, whether arising prior to, on or after the Petition Date, in contract or in

tort, at law or in equity or under any other theory of law, including but not limited to (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law; (2) the right to object to claims or interests; (3) claims pursuant to section 362 of the Bankruptcy Code; (4) such claims and defenses as fraud, negligence, breach of fiduciary duty, corporate waste, unlawful dividends, mistake, duress and usury; (5) all Avoidance Actions; (6) claims for tax refunds; (7) claims pursuant to section 510 of the Bankruptcy Code, and (8) any other claims which may be asserted against third parties or Insiders.

**"Chapter 11 Trustee"** means H. Jason Gold, the chapter 11 trustee appointed by the Bankruptcy Court for each of the Debtors pursuant to section 1104 of the Bankruptcy Code.

**"Claim"** means a claim as that term is defined in Bankruptcy Code section 101(5).

**"Claims Bar Date"** means October 16, 2008, which was the last date for filing Claims for all creditors, except governmental units, and December 8, 2008 for governmental units, against the Estates pursuant to the Notice of Bankruptcy, Meeting of Creditors, and Deadlines filed in each of the Cases.

**"Claims Objection Deadline"** means the last day for filing objections to General Unsecured Claims, which day shall be the later of (a) one hundred and eighty (180) days after the Effective Date or (b) such other date as the Bankruptcy Court may order.  The Liquidating Trustee may seek a one time automatic extension of the Claims Objection Deadline by filing a notice of extension of the Claims Objection Deadline, which shall automatically extend the Claims Objection Deadline until the date specified in such notice up to an additional one hundred and eighty (180) days after the current Claims Objection Deadline.  Thereafter, any further extension of the Claims Objection Deadline shall require bankruptcy court approval, and may be granted only upon a showing of exigent circumstances.  In the event that such a motion to further extend the Claims Objection Deadline is denied, the Claims Objection Deadline shall be the later of the current Claims Objection Deadline (as previously extended, if applicable) or thirty (30) days after the Bankruptcy Court's entry of an order denying the motion to further extend the Claims Objection Deadline. For the avoidance of doubt, after the Effective Date, no Person other than the Liquidating Trustee, and in the limited circumstances set forth in Article VI.A hereof the Monitoring Committee, shall be authorized to file objections to Claims.

**"Class"** means a group of Claims as classified in Article III.

"**Confirmation**" means the entry of an Order by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

**"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

**"Confirmation Hearing"** means the hearing regarding Plan Confirmation.

**"Confirmation Hearing Date"** means the first date on which the Bankruptcy Court holds the Confirmation Hearing.

**"Confirmation Order"** means the Final Order of the Bankruptcy Court confirming this Plan under Bankruptcy Code section 1129.

**"Consultation Matters"** has the meaning set forth in the definition of Advice and Consultation above.

**"Creditor"** means the Holder of a Claim against one or more Debtors.

**"Creditors' Committee"** means the Official Committee of Unsecured Creditors of Vijay K. Taneja, *et al.*, appointed by the United States Trustee in each of the Cases pursuant to Bankruptcy Code section 1102.

**"Debtor"** means Vijay K. Taneja, Financial Mortgage, Inc., NRM Investments, Inc., Taneja Center, Inc., or Elite Entertainment, Inc. in their individual capacity.

**"Debtors"** means, collectively, Vijay K. Taneja, Financial Mortgage, Inc., NRM Investments, Inc., Taneja Center, Inc., and Elite Entertainment, Inc.

**"Director"** means any current or former director of a Debtor.

**"Disclosure Statement"** means the Second Amended Disclosure Statement Relating to the First Amended Joint Plan of Liquidation of the Estates of Vijay K. Taneja and Affiliated Debtors, as it may be amended.

"**Disclosure Statement Order**" means the Final Order entered by the Bankruptcy Court approving the Disclosure Statement.

**"Disputed Claim"** means a Claim:

    (a)    As to which a proof of claim is filed or is deemed filed under Bankruptcy Rule 3003(b)(1) or a proof of interest is filed or is deemed filed under Bankruptcy Rule 3003(b)(2); and

    (b)    As to which an objection: (1) has been timely filed; and (2) has neither been overruled nor been denied by a Final Order and has not been withdrawn.

**"Disputed Claim Amount"** means (a) if the liquidated amount is set forth in the proof of claim relating to a Disputed Claim, (i) the liquidated amount set forth in the proof of claim relating to the Disputed Claim as may have been modified by Final Order of the Bankruptcy Court; (ii) the disputed amount as agreed to by the Liquidating Trustee and the Holder of such Disputed Claim; or (iii) if a request for estimation is filed by any party, the amount estimated as disputed by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the disputed amount agreed to by the Liquidating Trustee and the Holder of such Disputed Claim or (ii) zero; or (c) if the Claim was listed on the Bankruptcy Schedules as unliquidated, contingent or disputed and no proof of claim was filed, or deemed to

5

have been filed, by the applicable Claims Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court, zero.

**"Distribution"** means any transfer under the Plan of Cash or other property or instruments to either a Holder of an Allowed Administrative Expense Claim or a Holder of an Allowed Claim.

**"Effective Date"** has the meaning set forth in Article VIII.B.

**"Entity"** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

**"Estate"** means the bankruptcy estate of either Vijay K. Taneja, Financial Mortgage, Inc., NRM Investments, Inc., Taneja Center, Inc., or Elite Entertainment, Inc., in their individual capacity.

"**Estate Parties**" means the Persons referenced in Article VII.B. hereof.

**"Estates"** means, collectively, the bankruptcy estates of Vijay K. Taneja, Financial Mortgage, Inc., NRM Investments, Inc., Taneja Center, Inc., and/or Elite Entertainment, Inc.

**"Final Fee Application"** means the final requests or applications for payment of Professional Fee Claims.

**"Final Order"** means an order or judgment of a court of competent jurisdiction entered on such court's official docket:

      (a)      That has not been reversed, rescinded, stayed, modified, or amended;

      (b)      That is in full force and effect; and

      (c)      With respect to which: (1) the time to appeal or to seek review, remand, rehearing, or a *writ of certiorari* has expired and as to which no timely filed appeal or petition for review, rehearing, remand, or *writ of certiorari* is pending; or (2) any such appeal or petition has been dismissed or resolved by the highest court to which the order or judgment was appealed or from which review, rehearing, remand, or a *writ of certiorari* was sought.

**"General Unsecured Claim"** means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, a Non-Tax Priority Claim, a Secured Claim, or an Intercompany Claim.

**"Holder"** means the holder of a Claim or Interest.

**"Insider"** means an insider as that term is defined in Bankruptcy Code section 101(31).

**"Insider(s) Claims"** means any Claims against the Estate(s) filed by any Person who is an Insider.

**"Intercompany Claim"** means any claim of a Debtor against another Debtor.

**"Interest"** means any "equity security", within the meaning of section 101(16) of the Bankruptcy Code, issued by a Debtor, and any legal, equitable, contractual, and other rights of any Person with respect to any capital stock or other ownership interest in any Debtor, whether or not transferable, and all options, warrants, call rights, puts, awards, or rights or agreements to purchase, sell, or subscribe for an ownership interest or other equity security in any Debtor.

**"Interest Holder(s)"** means Holder(s) of Interests.

"**Liquidating Debtors**" means the Debtors from and after the Effective Date.

**"Liquidation Trust Assets"** shall have the meaning set forth in Article V.C.2. of the Plan.

**"Liquidating Trustee"** means H. Jason Gold or any successor Liquidating Trustee appointed as trustee of the Liquidation Trust pursuant to the terms of the Plan and the Liquidation Trust Agreement annexed to this Plan as Exhibit A.

**"Liquidation Trust"** means the liquidation trust described in Article V of this Plan that will succeed to all of the assets and liabilities of the Debtors, the Chapter 11 Trustee, and the Estates as of the Effective Date.

**"Liquidation Trust Agreement"** means the agreement annexed hereto as Exhibit A establishing and delineating the terms and conditions of the Liquidation Trust. A copy of the Liquidation Trust Agreement will be filed with the Bankruptcy Court prior to the Disclosure Statement hearing.

**"Local Rules"** means the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Virginia, as now in effect or hereafter amended and applicable to the Case.

**"Non-Tax Priority Claim"** means a Claim, other than and without duplication of an Administrative Expense Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to Bankruptcy Code section 507(a)(4), (5), or (7).

**"Officer"** means any current or former officer of a Debtor.

**"Monitoring Committee"** means a committee of three Creditors and/or their designated representatives established pursuant to Article V.F of this Plan.

**"Person"** means any natural person or Entity.

**"Petition Date"** means June 9, 2008.

"**Plan**" means this First Amended Joint Plan of Liquidation of the Estates of Vijay K. Taneja and Affiliated Debtors, as it may be amended.

"**Plan Participants**" means the persons entitled to exculpation as provided in Article VII of the Plan.

"**Plan Reserve Accounts**" means all accounts to be established by the Liquidating Trustee to hold the various Plan Reserves.

"**Plan Reserves**" means all reserves of assets of the Liquidation Trust established in the Liquidating Trustee's discretion with the Advice and Consultation of the Monitoring Committee on the Effective Date (or as soon as reasonably practicable thereafter) including, but not limited to the Post-Effective Date Expense Reserve and reserves for payment of Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, Disputed General Unsecured Claims, and undeliverable Distributions as of the date of any contemplated Distribution.

"**Post-Effective Date Expenses**" means any expenses incurred by the Liquidation Trust after the Effective Date including, but not limited to, professional fees incurred by the Liquidating Trustee or the Monitoring Committee, compensation payable to the Liquidating Trustee, expenses incurred by members of the Monitoring Committee, fees payable to the United States Trustee, and premiums related to any Liquidating Trustee's bond or insurance policy.

"**Post-Effective Date Expense Reserve**" means a reserve from the assets of the Liquidation Trust established by and at the discretion of the Liquidating Trustee with the Advice and Consultation of the Monitoring Committee to pay anticipated post-Effective Date Expenses.

"**Post-Petition**" means the time after the filing of the voluntary chapter 11 petitions in the Cases.

"**Priority Tax Claim**" means a Claim entitled to priority against any Debtor under Bankruptcy Code section 507(a)(8).

"**Pro Rata**" means proportionately so that the ratio of (a) the amount of consideration distributed on account of an Allowed Claim to (b) the amount of the Allowed Claim is the same as the ratio of (x) the amount of consideration available for distribution on account of all Allowed Claims in the Class in which that Allowed Claim is included to (y) the amount of all Allowed Claims in that Class.

**"Professional Fee Claim"** means:

      (a)      A Claim under Bankruptcy Code sections 326, 327, 328, 330, 331, 503(b), or 1103 for compensation for services rendered by the Chapter 11 Trustee or any of the Professionals, or related expenses, incurred after the Petition Date but prior to the Effective Date on behalf of the Estates; or

      (b)      A Claim either under Bankruptcy Code section 503(b)(4) for compensation for professional services rendered or under Bankruptcy Code section 503(b)(3)(D) for related expenses incurred after the Petition Date but prior to the Effective Date in making a substantial contribution to the Estate.

      (c)      For purposes of clarity: (i) claims of attorneys for contingent fees arising from a pre-Effective Date settlement or adjudication of a Cause of Action shall be treated as Professional Fee Claims; and (ii) claims of attorneys for contingent fees arising from a post-Effective Date settlement or adjudication of a Cause of Action shall not be considered Professional Fee Claims. Rather, post-Effective Date contingent fee claims shall be treated as Post-Effective Date Expenses, subject to the provisions of Article V.E.4 below.

**"Professionals"** means the professionals (attorneys, accountants, appraisers, financial advisors, and the like) employed by one or more of the Debtors, the Creditors' Committee or the Chapter 11 Trustee with the approval of the Bankruptcy Court at the expense of the Estates pursuant to sections 327, 328 and 1103 of the Bankruptcy Code.

**"Rejection Damage Claim"** means a Claim for damages arising under an unexpired lease of real or personal property or an executory contract that the Debtors or the Chapter 11 Trustee rejects under Bankruptcy Code section 365 or pursuant to the terms of this Plan.

**"Section 506(c) Claim"** means any surcharge claim asserted by the Liquidating Trustee as successor to the Chapter 11 Trustee after the Effective Date pursuant to Section 506(c) of the Bankruptcy Code.

**"Secured Claim"** means a Claim that is secured by a valid and unavoidable lien against property in which an Estate has an interest or that is subject to setoff under Bankruptcy Code section 553. A Claim is a Secured Claim only to the extent of the value of the claimholder's interest in the collateral securing the Claim or to the extent of the amount subject to setoff, whichever is applicable, and as determined under Bankruptcy Code section 506(a).

**"Unclaimed Property"** means any Cash or other property which is unclaimed for sixty (60) days after its distribution.

**"U.S. Trustee"** means the Office of the United States Trustee.

9

## II.  RULES OF INTERPRETATION

The rules of construction in Bankruptcy Code section 102 apply to this Plan.

1.      Except as otherwise provided in the Plan, Bankruptcy Rule 9006(a) applies when computing any time period under the Plan.

2.      A term that is used in this Plan and that is not defined in this Plan has the meaning attributed to that term, if any, in the Bankruptcy Code or the Bankruptcy Rules.

3.      The definition given to any term or provision in the Plan supersedes and controls any different meaning that may be given to that term or provision in the Bankruptcy Code, the Bankruptcy Rules or the Disclosure Statement.

4.      Whenever it is appropriate from the context, each term, whether stated in the singular or the plural, includes both the singular and the plural.

5.      Any reference to a document or instrument being in a particular form or on particular terms means that the document or instrument will be substantially in that form or on those terms.

6.      Any reference to an existing document means the document as it has been, or may be, amended or supplemented.

7.      Unless otherwise indicated, the phrase "in the Plan," "in this Plan," "under the Plan," "under this Plan," and similar words or phrases refer to this Plan in its entirety rather than to only a portion of the Plan.

8.      Unless otherwise specified, all references to Articles or Exhibits are references to this Plan's Articles or Exhibits.

9.      Article captions and headings are used only as convenient references and do not affect this Plan's meaning.

10.     Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) and except as otherwise provided herein or therein, the laws of (i) the Commonwealth of Virginia shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan and (ii) the laws of the state of incorporation of each Debtor shall govern corporate governance matters with respect to such Debtor, in either case without giving effect to the principles of conflicts of law thereof.

11.     All Exhibits are incorporated into and are a part of this Plan as if set forth in full herein.

### III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

The Plan divides Creditors and Holders of Interests into Classes based on their legal rights and interests and provides for the satisfaction of Claims from all remaining Assets in the Estates.  This Article classifies Claims, except for Administrative Expense Claims and Priority Tax Claims, which are not classified, for all purposes, including voting, confirmation, and Distribution under the Plan.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the Class description.  To the extent that part of the Claim or Interest falls within a different Class description, the Claim or Interest is classified in that different Class.  The following table summarizes the Classes of Claims and Interests under this Plan.

| CLASS | DESCRIPTION | IMPAIRED/ UNIMPAIRED | VOTING STATUS |
|---|---|---|---|
| Class 1 | Non-Tax Priority Claims | Impaired | Entitled to Vote |
| Class 2 | Secured Claims (Classes 2(a) and 2(b)) | Impaired | Entitled to Vote |
| Class 3 | General Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 | Intercompany Claims | Impaired | Deemed to Reject; Not Entitled to Vote on the Plan |
| Class 5 | Interests | Impaired | Deemed to Reject; Not Entitled to Vote on the Plan |

The treatment in this Plan is in full and complete satisfaction of all of the legal, contractual, and equitable rights that each Holder of an Allowed Claim or an Allowed Interest may have in or against the Debtors, the Estates or their property.  This treatment supersedes and replaces any agreements or rights those Holders have in or against the Debtors, the Estates or their property.  The Plan provides for the substantive consolidation of the Debtors' Assets and liabilities for voting and Distribution purposes as described in Article IV of this Plan.  All Distributions under the Plan will be tendered to the Person holding the Allowed Claim.  **EXCEPT AS SPECIFICALLY SET FORTH IN THIS PLAN, NO DISTRIBUTIONS WILL BE MADE AND NO RIGHTS WILL BE RETAINED ON ACCOUNT OF ANY CLAIM THAT IS NOT AN ALLOWED CLAIM.**

A.    **Allowance of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)**

Persons that hold Administrative Expense Claims and that do not timely file and serve a motion or application seeking payment in accordance with this Article will be forever barred from asserting those Administrative Expense Claims.

1.    **Allowed Administrative Expense Claims Other than Professional Fee Claims**

An Administrative Expense Claim that is not a Professional Fee Claim will be allowed only if: on or before the Administrative Expense Claim Bar Date, the Person holding the Claim both filed with the Bankruptcy Court a motion or application requesting that the Chapter 11 Trustee (prior to the Effective Date) or the Liquidating Trustee (after the Effective Date) pay the Claim and served the motion or application on the Chapter 11 Trustee (prior to the Effective Date), the Liquidating Trustee (after the Effective Date), the Creditors' Committee (prior to the Effective Date), the Monitoring Committee (after the Effective Date) and the U.S. Trustee.

Provided, however, that the Liquidating Trustee may elect, with the Advice and Consultation of the Monitoring Committee, to deem an Administrative Expense Claim (other than a Professional Fee Claim) incurred in the ordinary course of the Debtors' businesses to be treated as an Allowed Administrative Expense Claim in accordance with the terms and conditions of the particular transaction that gave rise to the Claim without requiring the Person holding such Administrative Expense Claim to file a request for payment.

Any objection to an Administrative Expense Claim must be filed by the Administrative Expense Claims Objection Deadline.  In the event that an objection is timely filed to an Administrative Expense Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Expense Claim.  In the event that no objection is filed to a timely filed Administrative Expense Claim by the Administrative Expense Claims Objection Deadline, such Administrative Expense Claim shall be deemed allowed in the amount requested.

2.    **Allowed Professional Fee Claims**

Final Fee Applications must be filed no later than twenty (20) days after the Effective Date.  Final Fee Applications will be noticed for hearing in accordance with the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Court Rules.  Objections, if any, shall be filed in accordance with the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Court Rules and served on the Professional whose Final Fee Application is being objected to, the Liquidating Trustee, the Monitoring Committee, and the Office of the U.S. Trustee.  Failure to properly object to a Final Fee Application constitutes a waiver of a party's right to object to a Final Fee Application.

### 3.    Allowed Priority Tax Claims

The Claim of any Person holding a Priority Tax Claim will be allowed only if such Person filed a Claim prior to the Claims Bar Date and no objection to the Priority Tax Claim is filed by the Claims Objection Deadline.

In the event that an objection is timely filed to a Priority Tax Claim, the Bankruptcy Court shall determine the allowed amount of such Priority Tax Claim.  In the event that no objection is timely filed to an otherwise properly filed Priority Tax Claim, such Priority Tax Claim shall be deemed allowed in the amount requested.

### B.    Treatment of Unclassified Claims (Administrative Expense Claims and Priority Tax Claims)

### 1.    Administrative Expense Claims

On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Trustee on behalf of the Liquidation Trust shall either (a) pay to each Holder of an Allowed Administrative Expense Claim a Pro Rata portion of Available Cash at that time, after the establishment of appropriate Plan Reserve Accounts (for, among other things, Disputed Administrative Expense Claims and Post-Effective Date Expenses) in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, and thereafter make periodic additional Cash payments as set forth in the next sentence, or (b) satisfy and discharge such Administrative Expense Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidating Trustee with the Advice and Consultation of the Monitoring Committee.  With respect to subsection (a) above, after the Effective Date and as often as reasonable in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, after the establishment or maintenance of any Plan Reserve Accounts, the Liquidating Trustee on behalf of the Liquidation Trust shall make additional periodic Cash Distributions to Holders of Allowed Administrative Expense Claims from Available Cash on a Pro Rata basis until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate Assets have been exhausted.  The failure to object to confirmation of this Plan by a Holder of an Allowed Administrative Expense Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in 11 U.S.C. § 1129(a)(9).

### 2.    Priority Tax Claims

On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Trustee on behalf of the Liquidation Trust shall either (a) pay to each Holder of an Allowed Priority Tax Claim a Pro Rata portion of Available Cash at that time, after payment of Allowed Administrative Expense Claims, and the establishment of appropriate Plan Reserve Accounts (for, among other things, Disputed Administrative Expense Claims, Disputed Priority Tax Claims and  Post-Effective Date Expenses) in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, and thereafter make periodic additional Cash payments as set forth in the next sentence, or (b) satisfy and discharge such

Allowed Priority Tax Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidating Trustee, with the Advice and Consultation of the Monitoring Committee. With respect to subsection (a) above, after the Effective Date and as often as reasonable in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, after payment of Allowed Administrative Expense Claims, and the establishment or maintenance of any Plan Reserve Accounts, the Liquidating Trustee on behalf of the Liquidation Trust shall make additional periodic Cash Distributions to Holders of Allowed Priority Tax Claims from Available Cash on a Pro Rata basis until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate Assets have been exhausted. The failure to object to Confirmation of this Plan by a Holder of a Priority Tax Claim shall be deemed to be such Holder's agreement to receive treatment for such Claim that is different from that set forth in 11 U.S.C. § 1129(a)(9).

### C.   Classification and Treatment of Non-Tax Priority Claims (Class 1)

**Classification:** Class 1 consists of all Non-Tax Priority Claims.

**Treatment:** On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, the Liquidating Trustee on behalf of the Liquidation Trust shall either (a) pay to each Holder of an Allowed Non-Tax Priority Claim a Pro Rata portion of Available Cash at that time, after payment of Post-Effective Date Expenses, Allowed Administrative Expense Claims and Allowed Priority Tax Claims, and the establishment of appropriate Plan Reserve Accounts (for, among other things, Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims and Post-Effective Date Expenses), in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, and thereafter make additional periodic Cash payments as set forth in the next sentence, or (b) satisfy and discharge such Allowed Non-Tax Priority Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidating Trustee, subject to Advice and Consultation with the Monitoring Committee. With respect to subsection (a) above, after the Effective Date and as often as reasonable in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, after payment of Post-Effective Date Expenses, Allowed Administrative Expense Claims and Allowed Priority Tax Claims and the establishment or maintenance of any Plan Reserve Accounts, the Liquidating Trustee on behalf of the Liquidation Trust shall make additional periodic Cash Distributions to Holders of Allowed Non-Tax Priority Claims from Available Cash on a Pro Rata basis until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate Assets have been exhausted. Any objection to a Non-Tax Priority Claim must be filed within sixty (60) days after the Effective Date.

### D.   Classification and Treatment of Secured Claims (Class 2)

**Classification:** Class 2 consists of all Secured Claims. Class 2(a) consists of the Secured Claim of Virginia Commerce Bank in Parcel B of the property located at 42530 Tall Cedars Parkway, Chantilly, Virginia. Class 2(b) consists of the Secured Claim of United Central Bank in the Goose Creek Parcel located on Belmont Ridge Road, Loudoun County, Virginia.

**Treatment:**  On the later to occur of (i) the Effective Date (or as soon as reasonably practicable thereafter) and (ii) the date on which such Claim shall become an Allowed Claim, each Person holding an Allowed Class 2 Claim will receive, at the election of the Liquidating Trustee, subject to Advice and Consultation with the Monitoring Committee, one of the following treatments in full satisfaction of its Allowed Class 2 Claim:

    (a)    The Liquidating Trustee will convey to the Person holding the Claim the collateral in which that Person has a security interest; or

    (b)    The Liquidating Trustee will pay to the Person holding the Claim any net sale proceeds actually received from the sale or disposition of the collateral in which that Person has a security interest up to the amount of any such claim; or

    (c)    The Liquidating Trustee will pay to the Person holding the Claim Cash in the amount of that Person's Allowed Class 2 Claim; or

    (d)    Such other Distributions or treatment as are necessary to leave the rights of the Holder of an Allowed Class 2 Claim unimpaired or as are necessary to otherwise satisfy the requirements of Chapter 11 of the Bankruptcy Code; or

    (e)    Such other and less favorable Distributions or treatments as may be agreed upon by and between the Person holding the claim and the Liquidating Trustee.

The Liquidating Trustee may in his discretion, subject to Advice and Consultation with the Monitoring Committee, select which of these treatments each Person holding an Allowed Class 2 Claim will receive.  Any objection to a Secured Claim must be filed by the Claims Objection Deadline.

**E.      Classification of and Treatment of General Unsecured Claims (Class 3)**

**Classification:**  Class 3 consists of all General Unsecured Claims.

**Treatment:**  On the later to occur of (a) the Effective Date (or as soon as reasonably practicable thereafter) and (b) the date on which such Claim shall become an Allowed Claim, the Liquidating Trustee on behalf of the Liquidation Trust shall either (i) pay to each Holder of Allowed General Unsecured Claims a Pro Rata portion of Available Cash at the time, after the payment of Post-Effective Date Expenses, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, Allowed Secured Claims, and the establishment of appropriate Plan Reserve Accounts (for, among other things, Disputed Administrative Expense Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, Disputed General Unsecured Claims and Post-Effective Date Expenses), in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, and thereafter make additional Cash payments as set forth in the next sentence, or (ii) satisfy and discharge such Allowed General Unsecured Claim in accordance with such other and less favorable terms as may be agreed upon by and between the Holder thereof and the Liquidating Trustee, subject to Advice and Consultation with the Monitoring

15

Committee.  With respect to subsection (a) above, after the Effective Date and as often as reasonable in the Liquidating Trustee's discretion, subject to Advice and Consultation with the Monitoring Committee, after payment of Post-Effective Date Expenses, Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims, Allowed Secured Claims, and the establishment or maintenance of any Plan Reserve Accounts, the Liquidating Trustee on behalf of the Liquidation Trust shall make additional periodic Cash Distributions to Holders of Allowed General Unsecured Claims from Available Cash on a Pro Rata basis until the earlier of the date that (i) such Claims are paid in full and (ii) all Estate Assets have been exhausted.  Any objection to a General Unsecured Claim must be filed by the Claims Objection Deadline.

> **F.**     **Classification and Treatment of Intercompany Claims (Class 4)**

**Classification:**  Class 4 consists of all Intercompany Claims.

**Treatment:**  In connection with, and as a result of, the substantive consolidation of all of the Debtors' Estates and Cases, Class 4 Intercompany Claims shall be deemed eliminated, cancelled, and/or extinguished and the Holders of Class 4 Claims shall not be entitled to, and shall not receive or retain any property or interest in property on account of such Claims. Notwithstanding the foregoing, the Liquidating Trustee specifically reserves all claims, rights and Causes of Action, including but not limited to all claims, rights and Causes of Action based on or involving the payment by one Debtor of any indebtedness owed by another Debtor.

> **G.**     **Classification and Treatment of Interests (Classes 5)**

**Classification:**  Class 5 consists of all Interests.

**Treatment:**  Class 5 Interests will receive and retain no value under the Plan, and all Class 5 Interests will be eliminated, cancelled, and/or extinguished on the Effective Date.

> **H.**     **Elimination of Classes**

Any Class of Claims that does not consist, as of the date of the Confirmation Hearing, of at least one Allowed Claim, Disputed Claim or Claim temporarily Allowed under Rule 3018 of the Bankruptcy Rules, shall be deemed deleted from this Plan for all purposes.

> **IV.     ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY ONE OR MORE CLASSES OF CLAIMS OR INTERESTS**

> **A.**     **Impaired Classes to Vote**

Each Holder of a Claim or Interest in an impaired Class shall be entitled to vote separately to accept or reject the Plan unless such Holder is deemed to accept or reject the Plan.

B.      **Holders of Administrative Expense Claims and Priority Tax Claims**

Holders of Administrative Expense Claims and Priority Tax Claims who do not object to confirmation of the Plan shall be deemed to have consented to treatment, as set forth in the Plan, that is different from that set forth in 11 U.S.C. § 1129(a)(9).

C.      **Acceptance by Class of Creditors**

An impaired Class of Claims shall have accepted the Plan if the Plan is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have voted to accept or reject the Plan.  A Class of Claims shall be deemed to accept the Plan in the event that no Holder of a Claim within that Class submits a Ballot by the Voting Deadline.

D.      **Cramdown**

In the event that any impaired Class of Claims or Interests shall fail to accept the Plan in accordance with section 1129(a) of the Bankruptcy Code, the Chapter 11 Trustee and the Creditors' Committee reserve the right to request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code or amend the Plan in accordance with section 1129(a) of the Bankruptcy Code.

## V.   PLAN IMPLEMENTATION

A.      **Plan Objectives**

The Plan establishes a Liquidation Trust on the Effective Date for the purposes of (a) administering the Assets of the Debtors and the Estates, including, but not limited to, the prosecution and/or settlement of Causes of Action, (b) resolving Claims, and (c) making Distributions to the Beneficiaries provided for under the Plan.  The Liquidation Trust shall be under the direction and control of the Liquidating Trustee, subject to Advice and Consultation with the Monitoring Committee, as trustee of the Liquidation Trust, as more specifically set forth in the Liquidation Trust Agreement.  On the Effective Date, all of the Debtors' and the Estates' Assets shall vest in the Liquidation Trust.

B.      **Substantive Consolidation**

On the Effective Date, the Debtors will be substantively consolidated and will, thereafter, be known as the Liquidating Debtors.  As of the Effective Date: (i) all Intercompany Claims by, between and among the Debtors shall be eliminated, (ii) all Assets and liabilities of the Debtors shall be merged or treated as if they were merged with the Assets and liabilities of every other Debtor, (iii) any obligation of a Debtor and all guarantees thereof by one or more of the other Debtors shall be deemed to be one obligation of the substantively consolidated Liquidating Debtors, (iv) the Interests shall be cancelled, (v) each Claim filed or to be filed against any Debtor shall be deemed filed against the Liquidating Debtors and shall be deemed a single Claim against and a single obligation of the Liquidating Debtors; and (vi) all Claims based upon guarantees of collection, payment, or performance made by the Debtors as to the obligations of another Debtor shall be released and of no further force and effect.

17

Nothing in this Plan or the Disclosure Statement, including without limitation, the substantive consolidation provided for herein, shall constitute an admission that the Debtors acted as alter egos. In addition, the Debtors, the Debtors' Estates, the Liquidating Debtors, the Chapter 11 Trustee, and the Liquidating Trustee specifically reserve all claims and Causes of Action, including without limitation, all claims and Causes of Action based on or involving the payment by one Debtor of any indebtedness owed by another Debtor.

C.    **The Liquidation Trust**

1.    **Formation of the Liquidation Trust**

On the Effective Date, the Liquidation Trust shall be established pursuant to the Liquidation Trust Agreement, attached to the Plan as Exhibit A, for the purposes of, *inter alia*, (a) administering all of the Assets of the Debtors and the Estates conveyed to the Liquidation Trust, (b) resolving all Claims, and (c) making all Distributions to the Beneficiaries provided for under the Plan.

2.    **Funding of the Liquidation Trust**

(a)    On the Effective Date, all of the Assets of the Debtors and the Estates, as well as the rights and powers of the Debtors, the Estates, the Liquidating Debtors and the Chapter 11 Trustee, shall automatically vest in the Liquidation Trust for the benefit and on behalf of the Beneficiaries (the "Liquidation Trust Assets"). The Liquidation Trust shall succeed to all of the Debtors' and the Estates' rights, title, and interest in the Assets and the Debtors will have no further interest in or with respect thereto.

(b)    The Liquidation Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidation Trust in exchange for the beneficial interests in the Liquidation Trust. Thus, for tax purposes, the Beneficiaries shall be treated as the grantors and owners of the Liquidation Trust.

(c)    As soon as possible after the Effective Date, but in no event later than ninety (90) days thereafter, (i) the Liquidating Trustee shall determine the fair market value of the Liquidation Trust Assets as of the Effective Date, based on his good faith estimation and advise the Monitoring Committee of such estimated valuation, and (ii) the Liquidating Trustee shall apprise the Beneficiaries of such estimated valuation by notice mailed to the address of such Beneficiary set forth in any request for notice filed with the Court; or if no such request has been filed, such address set forth in any proof of claim filed, and, if no claim has been filed, such address set forth in the schedules, if any. The Trustee shall have no other or further obligation to notify Beneficiaries of the estimated value of the Liquidation Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidation Trust, the

18

Liquidation Trustee and the Beneficiaries) for all federal income tax purposes.

**3.     Rights and Powers of the Liquidation Trust**

The Liquidation Trust Assets will be administered by the Liquidating Trustee pursuant to the terms of this Plan and the Liquidation Trust Agreement.   The Liquidation Trust, acting through the Liquidating Trustee pursuant to the terms of this Plan and the Liquidation Trust Agreement, shall be authorized to exercise and perform the rights, powers and duties held by the Estates, subject to Advice and Consultation with the Monitoring Committee as to Consultation Matters including without limitation the authority as the Estates' representative under section 1123(b)(3) of the Bankruptcy Code, to provide for the prosecution, settlement, adjustment, retention and enforcement of claims and interests of the Estates, including but not limited to the Causes of Action, the authority to administer the Claims resolution process, and the authority to exercise all rights and powers under sections 506(c), 544-551, 1106, 1107 and 1108 of the Bankruptcy Code.

**D.     Conclusion of Services of the Chapter 11 Trustee and the Creditors Committee**

Except as provided below in this Article V.D., on the Effective Date, the duties, responsibilities and services of the Chapter 11 Trustee and the Creditors' Committee shall conclude and the Creditors' Committee shall cease to exist.   Its members, designated representatives and/or agents (including, without limitation, attorneys, investment bankers, financial advisors, accountants and other professionals) shall, subject to those matters set forth below, be released and discharged from any further authority, duties, responsibilities and obligations relating to, arising from, or in connection with the Cases.

On and after the Effective Date, the Debtors' and the Liquidating Debtors' affairs will be managed by the Liquidating Trustee, pursuant to the terms of the Plan and the Liquidation Trust Agreement, subject to Advice and Consultation with the Monitoring Committee as to Consultation Matters.   The Chapter 11 Trustee shall turn over to the Liquidating Trustee all property of the Estates, including without limitation all business and financial records of the Estates.   The Chapter 11 Trustee shall continue to serve after such date with respect to (i) all the applications filed pursuant to section 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any Professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of this Plan or the Confirmation Order (iii) to immediately effectuate any transition from the Chapter 11 Trustee to the Liquidation Trustee consistent with the terms of the Plan; and (iv) to file any required post-Confirmation reports. The Creditors' Committee shall continue to exist after such date with respect to (i) all the applications filed pursuant to section 330 and 331 of the Bankruptcy Code seeking payment of fees and expenses incurred by any Professional, (ii) any post-confirmation modifications to, or motions seeking the enforcement of, the provisions of the Plan or the Confirmation Order and (iii) to immediately effectuate any transition from the Creditors' Committee to the Monitoring Committee consistent with the terms of the Plan.

### E.    Liquidating Trustee

#### 1.    Identity

On the Effective Date, H. Jason Gold will be appointed the Liquidating Trustee, as trustee of the Liquidation Trust.

#### 2.    Responsibilities of Liquidating Trustee

a.    The responsibilities of the Liquidating Trustee are more thoroughly set forth in the Liquidation Trust Agreement, and, subject to Advice and Consultation with the Monitoring Committee as to Consultation Matters, shall include, without limitation: (i) prosecuting and/or settling the Causes of Action; (ii) prosecuting and/or settling objections to, and estimations of, Claims; (iii) liquidating the remaining property of the Estates, and providing for the distribution of the net sale proceeds thereof, in accordance with the provisions of the Plan; (iv) calculating and implementing all Distributions required under the Plan; (v) filing all required tax returns, and paying taxes and all other obligations on behalf of the Liquidating Debtors from Estate funds; (vi) managing the wind down of the Liquidating Debtors, and otherwise administering the Liquidating Debtors; (vii) conferring with the Monitoring Committee to provide regular status updates as described in subpart (b) below; (viii) establishing at his discretion the Plan Reserves, subject to the availability of funds; and (ix) such other responsibilities as may be vested in the Liquidating Trustee pursuant to the Confirmation Order or the Liquidation Trust Agreement, or as may be necessary and proper to carry out the provisions of the Plan

b.    The Liquidating Trustee and the Monitoring Committee shall use their best good faith efforts to confer in person or telephonically on a bi-weekly basis or at such other intervals as the parties may mutually agree.  At such meetings, the Liquidating Trustee shall provide updates regarding the current status of and various issues and strategies concerning (i) the litigation and/or settlement of the Causes of Action, (ii) the Claims resolution process, including the allowance of, objection to and litigation and/or settlement of any and all Claims, (iii) the proposed distributions on Allowed Claims, (iv) the creation of proposed Plan Reserve Accounts, (v) professional fee and expense reimbursement requests by the Liquidating Trustee and his professionals and the Monitoring Committee and its professionals, (vi) the current financial status of the Liquidation Trust, and (vii) various other Case related issues and strategies.  The Liquidating Trustee shall provide copies of monthly operating reports to the Monitoring Committee as they are prepared.  The Liquidating Trustee shall obtain a bond in an amount equal to 125% of the amount of liquid assets he holds or shall hold at any time on behalf of the Estates.  The Liquidating Trustee shall use the Liquidating Debtors' Cash on hand or Cash in a designated Plan Reserve Account to pay the premiums on such bond.

#### 3.    Powers and Authority of Liquidating Trustee

The powers and authority of the Liquidating Trustee shall be set forth in the Liquidation Trust Agreement, and shall include without limitation and without further Bankruptcy Court approval the power (i) to invest funds of the Estates, and withdraw funds of the Estates, make Distributions, incur obligations for reasonable and necessary expenses in liquidating and converting any remaining assets of the Liquidating Debtors to Cash and pay taxes and other

obligations owed by the Debtors and/or the Liquidating Debtors from funds held by the Liquidating Trustee in accordance with the Plan; (ii) to engage employees and professionals to assist the Liquidating Trustee with respect to his responsibilities, including, but not limited to, any Professionals employed by the Chapter 11 Trustee and/or the Creditors' Committee; (iii) to prosecute, compromise and/or settle claims and Causes of Action and objections to Disputed Claims on behalf of the Liquidating Debtors and the Estates; (iv) to liquidate any remaining assets, and provide for the Distributions in accordance with the provisions of the Plan; (v) to manage the continued liquidation of the Liquidating Debtors' assets, and to otherwise administer the Liquidating Debtors; (vi) to stand in the shoes of the Debtors and assert or waive attorney client and other privileges; (vii) to interpret the Plan in the Liquidating Trustee's reasonable discretion; and (viii) such other powers and authority as may be vested in or assumed by the Liquidating Trustee or by any Court Order or as may be necessary, appropriate or incident to the performance of his duties under the Plan and the Liquidation Trust Agreement.  Subject to Advice and Consultation with the Monitoring Committee, the Liquidating Trustee, on behalf of the Debtors, the Liquidating Debtors and the Estates, shall have discretion to pursue, not pursue or settle, any and all Causes of Action and objections to Claims, as he determines is in the best interests of the Liquidating Debtors and the Estates.

### 4.    Retention of Professionals

(a).    <u>Retention Arrangements</u>.  The Liquidating Trustee may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist him in fulfilling his obligations under the Plan, and on whatever fee arrangement he deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements, subject to Advice and Consultation with the Monitoring Committee, provided however that the Liquidating Trustee may employ professionals that were previously employed by the Chapter 11 Trustee or by the Creditors' Committee without such Advice and Consultation.  Special avoidance action counsel to the Chapter 11 Trustee shall be retained by the Liquidating Trustee on the same terms and conditions as their pre-Effective Date retentions.  Contingent fees are due and payable to special avoidance counsel and any other counsel engaged on a contingent fee basis only upon actual receipt of litigation proceeds either through settlement or other recovery.  The provisions set forth in subpart (b) below shall not apply to contingent fees, but shall apply to reimbursement of contingent fee counsel's reasonable expenses.

(b)    <u>Payment of Professionals</u>.  Professionals engaged by the Liquidating Trustee shall not be required to file applications for compensation in order to receive the compensation provided for herein.  Rather such professionals shall provide copies of monthly invoices to the Monitoring Committee.  Upon submission of a monthly invoice by a professional engaged by the Liquidating Trustee to the Monitoring Committee, the Monitoring Committee shall have ten (10) Business Days to object in writing (sent to the professional with a copy to the Liquidating Trustee) to the payment of such invoice.  Such objection shall state the amount of fees and/or disbursements which are disputed and the specific grounds therefor.  If no written objection is made to such invoice, the Liquidating Trustee shall proceed to pay such invoice from Available Cash or a designated Plan Reserve Account.  If a written objection is timely made, the Liquidating Trustee shall proceed to pay any portion of such invoice as to which no objection has been made from Available Cash or a designated Plan Reserve Account, and the affected professional and the Liquidating Trustee shall promptly meet and confer with the Monitoring

Committee to attempt to resolve the objection. If as a result of such meeting, the objection is withdrawn or resolved, the Liquidating Trustee shall proceed to pay the remainder of such invoice (subject to adjustment if the withdrawal or resolution of the objection was based upon a consensual reduction of the amount in dispute) from Available Cash or a designated Plan Reserve Account. If the objection is not withdrawn or resolved, the parties may mutually agree to submit the dispute to binding arbitration or, if the parties do not mutually agree to arbitration, then they may file a motion with the Bankruptcy Court to decide the matter. Notwithstanding anything to the contrary herein, special avoidance action counsel and other counsel retained on a contingent fee basis shall be required to follow the foregoing procedure only with respect to reimbursement of expenses from Liquidation Trust Assets and not with respect to contingent fees earned.

### 5.    Liquidating Trustee Compensation

In addition to the reimbursement for actual out-of-pocket expenses incurred by the Liquidating Trustee, the Liquidating Trustee shall be entitled to receive reasonable compensation for services rendered on behalf of the Liquidation Trust which compensation shall be calculated as follows:

(i)    Except as provided in subparagraph (ii) below, the Liquidating Trustee's total compensation under the Plan shall be capped at the lower of (a) 1.5 times the Liquidating Trustee's 2010 hourly rate of $625 per hour times the reasonable number of hours spent by the Liquidating Trustee in the fulfillment of his duties and responsibilities under the Plan and the Liquidation Trust Agreement and the reasonable number of hours spent by the Chapter 11 Trustee in the fulfillment of his duties prior to the Effective Date; and (b) three percent (3%) of all disbursements, Distributions and expenditures made by both the Chapter 11 Trustee and the Liquidating Trustee from and after the date of the Chapter 11 Trustee's appointment ("Total Disbursements"), less the amount of compensation already paid to the Chapter 11 Trustee and the Liquidating Trustee.

(ii)    Notwithstanding subparagraph (i) above, in the event that the Holders of Allowed Class 3 Claims (General Unsecured Claims) receive dividend Distributions totaling fifty percent (50%) or more of their Allowed Class 3 Claims, the Liquidating Trustee's compensation will not be limited to the hourly amounts specified in subparagraph (i) above; rather, the Liquidating Trustee shall be entitled to compensation calculated in the same manner as provided under section 326(a) of the Bankruptcy Code, capped at three percent (3%) of Total Disbursements, less the amount of compensation already paid to the Chapter 11 Trustee and the Liquidating Trustee.

The Liquidating Trustee shall not be required to file an application for compensation in order to receive the trustee compensation provided for herein, provided, however, the

Liquidating Trustee shall provide copies of monthly invoices to the Monitoring Committee. Upon submission of a monthly invoice by the Liquidating Trustee to the Monitoring Committee, the Monitoring Committee shall have ten (10) Business Days to object in writing (sent to the Liquidating Trustee) to the payment of such invoice. Such objection shall state the amount of fees and/or disbursements which are disputed and the grounds therefor. If no written objection is made to such invoice, the Liquidating Trustee may proceed to pay such invoice from Available Cash or a designated Plan Reserve Account. If a written objection is timely made, the Liquidating Trustee may proceed to pay any portion of such invoice as to which no objection has been made from Available Cash or a designated Plan Reserve Account, and the Liquidating Trustee and the Monitoring Committee shall promptly meet and confer in an attempt to resolve such disputes. If the objection is withdrawn or resolved, the Liquidating Trustee may proceed to pay the remainder of such invoice (subject to adjustment if the withdrawal or resolution of the objection was based upon a consensual reduction of the amount in dispute) from Available Cash on hand or a designated Plan Reserve Account. If the objection is not withdrawn or resolved, the parties may mutually agree to submit the dispute to binding arbitration or, if the parties do not mutually agree to arbitration, then they may file a motion with the Bankruptcy Court to decide the matter.

### 6. Successor Liquidating Trustee

In the event that the Liquidating Trustee resigns (with 30 days notice to the Monitoring Committee and the U.S. Trustee), is removed, or otherwise ceases to serve as Liquidating Trustee, the Monitoring Committee shall select a successor Liquidating Trustee within ten (10) Business Days of such resignation, removal or other cessation of service by the incumbent Liquidating Trustee, subject to Bankruptcy Court approval. Any successor Liquidating Trustee shall be subject to the same qualifications and shall have the same rights, powers, duties and discretion, and otherwise be in the same position, as the originally named Liquidating Trustee. References herein to the Liquidating Trustee shall be deemed to refer to any successor Liquidating Trustee acting hereunder. The Liquidating Trustee may be removed only for cause in accordance with Bankruptcy Code section 324(a), including, but not limited to, breach of his duties under the Plan, and only by order of the Bankruptcy Court.

### 7. Termination of Liquidation Trust

The duties, responsibilities and powers of the Liquidating Trustee shall terminate in accordance with the terms of the Liquidation Trust Agreement after all of the Liquidation Trust's assets have been liquidated and after all Distributions have been made to Holders of Allowed Claims and the Liquidating Trustee obtains an order for final decree.

### 8. Records

The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Cash and other assets of the Liquidation Trust, the management thereof, all post-Effective Date transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trustee after the Effective Date, and all Distributions contemplated or effectuated under the Plan. The Monitoring Committee shall be entitled to examine the Liquidating Trustee's books and records during normal business hours upon reasonable notice to the Liquidating Trustee subject to all applicable privileges.

F.      **The Monitoring Committee**

1.      **Formation and Responsibilities**

The Monitoring Committee is established to provide Advice and Consultation to the Liquidating Trustee.  The Monitoring Committee shall consist of three Creditors (or their designated representatives) to be identified by the Creditors' Committee at the Confirmation Hearing.  Approval of a majority of the members of the Monitoring Committee shall be required for the Monitoring Committee to act.  In the event that a member of the Monitoring Committee resigns or is removed, the remaining members of the Monitoring Committee shall select another Creditor (or its designated representative) as a successor to serve in the place of the resigning or removed member.  Members of the Monitoring Committee may be removed for cause, including, but not limited to, breach of their duties under the Plan, and only by order of the Bankruptcy Court.

The Monitoring Committee shall provide Advice and Consultation to the Liquidating Trustee regarding all Consultation Matters as more specifically set forth in subparagraph 3 below.  Except for (a) reimbursement of reasonable expenses, and (b) indemnification, the members of the Monitoring Committee shall receive no other compensation or other payment for the performance of their duties hereunder.  The Monitoring Committee may adopt by-laws with respect to its operation so long as such by-laws are consistent with the terms of this Plan. The Monitoring Committee shall provide a copy of its bylaws, if any, to the Liquidating Trustee.

2.      **Retention of Professionals**

The Monitoring Committee may, without further order of the Bankruptcy Court, employ various professionals, including, but not limited to, counsel, consultants, and financial advisors, as needed to assist it in fulfilling its obligations under the Plan, and on whatever fee arrangement it deems appropriate, including, without limitation, hourly fee arrangements and contingency fee arrangements.  The Monitoring Committee may employ Professionals that were previously employed by the Creditors' Committee or the Chapter 11 Trustee.

Professionals engaged by the Monitoring Committee shall not be required to file applications for compensation in order to receive the compensation provided for herein.  Rather such professionals shall provide copies of monthly invoices to the Liquidating Trustee.  Upon submission of a monthly invoice by a professional of the Monitoring Committee to the Liquidating Trustee, the Liquidating Trustee shall have ten (10) Business Days to object in writing (sent to the professional with a copy to the Monitoring Committee's counsel) to the payment of such invoice.  Such objection shall state the amount of fees and/or disbursements which are disputed and the specific grounds therefor.  If no written objection is made to such invoice, the Liquidating Trustee shall proceed to pay such invoice from Available Cash or a designated Plan Reserve Account.  If a written objection is timely made, the Liquidating Trustee shall proceed to pay any portion of such invoice as to which no objection has been made from Available Cash or a designated Plan Reserve Account, and the affected professional and the Monitoring Committee shall promptly meet and confer with the Liquidating Trustee to attempt to resolve the objection. If as a result of such meeting, the objection is withdrawn or resolved, the Liquidating Trustee shall proceed to pay the remainder of such invoice (subject to adjustment if the withdrawal or resolution of the objection was based upon a consensual reduction of the amount in dispute) from Available Cash or a designated Plan Reserve Account.  If the objection

24

is not withdrawn or resolved, the parties may mutually agree to submit the dispute to binding arbitration or, if the parties do not mutually agree to arbitration, then they may file a motion with the Bankruptcy Court to decide the matter.

### 3.    Advice and Consultation: Resolution of Disputes

Except in the case of urgent matters that dictate a shorter time frame, the Liquidating Trustee will use reasonable best efforts to provide counsel for the Monitoring Committee at least five (5) Business Days in which to provide Advice and Consultation concerning Consultation Matters and the Monitoring Committee will use reasonable best efforts to provide such Advice and Consultation within the five (5) Business Day period.  In addition to the foregoing, the Liquidating Trustee and the Chair Person of the Monitoring Committee may communicate directly or through counsel at their discretion.  In the event that the Monitoring Committee objects within such five (5) Business Day Period (or shorter period in the case of urgent matters) to a proposed course of action with respect to any Consultation Matters, the parties will confer and attempt to resolve such dispute within five (5) Business Days after such objection is raised ("Settlement Conference").  If the parties are unable to resolve their dispute consensually, the Monitoring Committee may file an objection to the proposed action with the Bankruptcy Court, provided it does so within five (5) Business Days after the Settlement Conference.  Failure to timely object as provided herein shall constitute a waiver of such objection. In the event that an objection is timely filed, actions other than settlements shall be determined by the business judgment standard, and settlements shall be determined by the standard for approval of a settlement under Bankruptcy Rule 9019 and applicable case law.

### 4.    Termination of Monitoring Committee

The duties, responsibilities and powers of the Monitoring Committee shall terminate in accordance with the terms of the Liquidation Trust Agreement after all of the Liquidation Trust Assets have been liquidated and after all Distributions have been made to Holders of Allowed Claims and the Liquidating Trustee obtains an order for final decree.

### G.    Indemnification

From and after the Effective Date, the Chapter 11 Trustee, the Creditors' Committee, the members of the Creditors' Committee, the Liquidating Trustee, the Monitoring Committee, and the members of the Monitoring Committee, and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "Indemnified Parties" and each an "Indemnified Party") shall be indemnified by the Liquidating Trust, to the fullest extent permissible by applicable law, from and against any and all claims, debts, dues, accounts, actions, suits, causes of action, bonds, covenants, judgments, damages, attorneys' fees and defense costs and other assertions of liability arising out of any such Indemnified Parties' good faith exercise of what such Indemnified Party reasonably understands to be its powers or the discharge of what such Indemnified Party reasonably understands to be its duties conferred by the Plan, the Liquidation Trust Agreement, or by any order of the Bankruptcy Court entered pursuant to, or in furtherance of, this Plan, applicable law, or otherwise (except only for actions or omissions to act to the extent determined by a Final Order of a court of competent jurisdiction to be due to their own respective fraud, gross negligence or intentional misconduct), including without limitation, acts or omissions concerning pursuing, not pursuing or settling the Causes of Action, sales of assets, or objections

to Claims, on and after the Effective Date.  The foregoing indemnification shall also extend to matters directly or indirectly, in connection with, arising out of, based on, or in any way related to (i) the Plan; (ii) the services to be rendered pursuant to the Plan; (iii) the Liquidation Trust Agreement or any other document or information, whether verbal or written, referred to herein or supplied to or by the Liquidating Trustee; and/or (iv) the pre-Effective Date acts and omissions of the Creditors' Committee and the Chapter 11 Trustee and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors and assigns.   The Liquidating Trustee, with the Advice and Consultation of the Monitoring Committee, shall, on demand, advance or pay promptly out of Available Cash or a Plan Reserve Account set up specifically for this purpose if such an account is established by the Liquidating Trustee, on behalf of each Indemnified Party, reasonable attorneys' fees and other expenses and disbursements which such Indemnified Party would be entitled to receive pursuant to the foregoing indemnification obligation; provided, however, that any Indemnified Party receiving any such advance shall execute a written undertaking to repay such advance amounts if a court of competent jurisdiction ultimately determines that such Indemnified Party is not entitled to indemnification hereunder due to the fraud, gross negligence or intentional misconduct of such Indemnified Party.  The Liquidating Trustee may in his discretion, subject to Advice and Consultation with the Monitoring Committee, obtain insurance to cover the indemnity obligations of the Liquidation Trust, the premiums, fees and other costs of which shall be paid from the Liquidation Trust Assets.

### H.     Provision for Treatment of Disputed Claims

### 1.     Liquidating Trustee Standing

Unless otherwise ordered by the Bankruptcy Court or provided for in the Plan, the Liquidating Trustee will have the exclusive right, subject to Advice and Consultation with the Monitoring Committee as to Consultation Matters, except with respect to applications for the allowance of compensation and reimbursement of expenses of professionals under sections 330 and 503 of the Bankruptcy Code, to object to the allowance of Claims.  The Liquidating Trustee may, subject to the Advice and Consultation of the Monitoring Committee, bring, compromise and settle any objections to Claims without the approval of the Bankruptcy Court.  At such time as a Disputed Claim is resolved by Final Order and is Allowed or is settled by the Liquidating Trustee, with the Advice and Consultation of the Monitoring Committee, the Holder thereof will receive, as soon as practicable thereafter, the Distributions to which such Holder is then entitled under this Plan.

### 2.     Plan Reserves

### a.     Establishment of Plan Reserves

On or after the Effective Date, and subject to the availability of funds, the Trustee, subject to Advice and Consultation with the Monitoring Committee, may in his discretion establish appropriate reserves, including but not limited to reserves for Post-Effective Date Expenses, Disputed Administrative Claims, Disputed Priority Tax Claims, Disputed Non-Tax Priority Claims, Disputed Secured Claims, and Disputed General Unsecured Claims, which shall be funded in accordance with Article V.H.2.b. below.

26

### b.      Order of Funding of Reserves

The Plan Reserves, if any, shall be funded in the following order, and no Plan Reserve shall be funded until the prior Plan Reserves have been fully funded in accordance with the terms of this Plan: (i) the Post-Effective Date Expense Reserve; (ii) the Disputed Administrative Expense Claims Reserve; (iii) the Disputed Priority Tax Claims Reserve; (iv) the Disputed Non-Tax Priority Claims Reserve; (v) the Disputed Secured Claims Reserve; and (vi) the Disputed Unsecured Claims Reserve.  In addition to the specific reserves identified herein, the Liquidating Trustee may, until they become deliverable, create a reserve for undeliverable Distributions, subject to Article V.I.9 below for the benefit of the Persons entitled to the Distributions and such other reserves as he deems appropriate with the Advice and Consultation of the Monitoring Committee.

### c.      Investment of Reserves

If practicable, the Liquidating Trustee may invest any Cash that is held in any of the Plan Reserves created under this Plan in an appropriate manner to ensure the safety of the investment; provided, however, that, except to the extent expressly set forth in this Plan, nothing in this Plan, the Disclosure Statement, or the Liquidating Trust Agreement shall be deemed to entitle the Holder of a Claim to postpetition interest on such Claim.

## I.      Distribution of Property Under the Plan

### 1.      Source of Distributions

The sources of all Distributions and payments under this Plan are the Available Cash and any collateral securing Allowed Secured Claims, and the proceeds from the liquidation of the Causes of Action and any remaining property of the Estates.

### 2.      Manner of Cash Payments

Cash payments to domestic entities holding Allowed Claims will be denominated in U.S. dollars and will be made by checks drawn on a domestic bank selected by the Liquidating Trustee or, at the Liquidating Trustee's option, by wire transfer from a domestic bank.  Cash payments to foreign entities holding Allowed Claims may be paid, at the Liquidating Trustee's option, either in the same manner as payments to domestic entities or in any funds and by any means that are necessary or customary in the particular foreign jurisdiction.

### 3.      Setoff and Recoupment

Notwithstanding anything to the contrary in this Plan, the Liquidating Trustee may set off, recoup, or withhold against the Distributions to be made on account of any Allowed Claim any claims that the Debtors or the Liquidating Debtors or their Estates may have against the claimant or the Person holding the Allowed Claim.  The Liquidating Trustee does not and shall not be deemed to waive or release any claim against those Persons by failing to effect such a setoff or recoupment, by the allowance of any claim against the Debtors or the Liquidating

Debtors or their Estates, or by making a Distribution on account of an Allowed Claim.  In addition, the settlement or adjudication of any Avoidance Action shall not bar the Liquidating Trustee from filing a subsequent objection to Claim.

### 4.    Interest on Claims

Unless otherwise specifically provided for in this Plan, the Confirmation Order, any order of this Court, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on any Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date.

### 5.    Withholding and Reporting Requirements

In connection with this Plan and all Distributions under this Plan, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding, payment, and reporting requirements imposed by any federal, state, provincial, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding, payment, and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding, payment and reporting requirements. All amounts properly withheld from Distributions to a Holder as required by applicable law and paid over to the applicable taxing authority for the account of such Holder shall be treated as part of the Distributions to such Holder. All Holders shall be required to provide any information necessary to effect information reporting and withholding of such taxes, including but not limited to taxpayer identification numbers.  Notwithstanding any other provision of this Plan, each Holder of an Allowed Claim that is to receive a Distribution pursuant to this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any governmental unit, including income, withholding, and other tax obligations, on account of such Distribution.

### 6.    No *De Minimus* Distributions

Notwithstanding anything to the contrary in the Plan, no Cash payment of less than $100 will be made by the Liquidating Trustee to any Person holding an Allowed Claim.  No consideration will be provided in lieu of the *de minimus* Distributions that are not made under this Article.

### 7.    Fractional Dollars

Any other provision of this Plan notwithstanding, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down.

### 8.    No Distributions With Respect to Disputed Claims

Notwithstanding any other Plan provision, Distributions will be made on account of a Disputed Claim only after, and only to the extent that, the Disputed Claim becomes an Allowed Claim, **provided, however**, that if the only dispute regarding a Disputed Claim is to the amount of the Disputed Claim, the Holder of a Disputed Claim shall be entitled to receive a Distribution on account of that portion of the Disputed Claim, if any, which the Liquidating Trustee does not dispute, which Distribution shall be made by the Liquidating Trustee at the same time and in the same manner that such Liquidating Trustee makes Distributions to Holders of similar Allowed Claims pursuant to the provisions of the Plan.  The Liquidating Trustee may, in his discretion, withhold Distributions otherwise due and payable by the Liquidating Trustee hereunder to any applicable Holder of a Claim until the Claims Objection Deadline, to enable a timely objection thereto to be filed.  A Claim of any Person from which property may be recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code or that is a transferee of a transfer that may be avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be a Disallowed Claim unless and until the Person or transferee has paid the amount or turned over the property for which such Person or transferee is liable.  Any Holder of a Claim that becomes an Allowed Claim after the Effective Date will receive its Distribution in accordance with the terms and provisions of this Plan and the Liquidation Trust Agreement.

### 9.    Undeliverable or Unclaimed Distributions

Subject to subparagraph (I)(2) above, Distributions to Persons holding Allowed Claims will initially be made by mail as follows:

(a)    Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Liquidating Trustee; or

(b)    If no such address is available, Distributions will be sent to the address set forth on the Bankruptcy Schedules.

If no address is available either on a proof of claim or on the Bankruptcy Schedules, the Distribution will be deemed to be undeliverable.  If a Distribution is returned to the Liquidating Trustee as an undeliverable Distribution or is deemed to be an undeliverable Distribution, the Liquidating Trustee will make no further Distribution to the Person holding the Claim on which the Distribution is being made unless and until the Liquidating Trustee is timely notified in writing of that Person's current address.  Subject to the following paragraph, until they become deliverable, the Liquidating Trustee may, in his discretion, create a Plan Reserve for undeliverable Distributions for the benefit of the Persons entitled to the Distributions.  These Persons will not be entitled to any interest on account of the undeliverable Distributions.

Any Person that is otherwise entitled to an undeliverable Distribution and that does not, within the later of six months after the Effective Date, or sixty (60) days after a Distribution is returned to the Liquidating Trustee as undeliverable, or is deemed to be an undeliverable Distribution, provide the Liquidating Trustee with a written notice asserting its claim to or interest in that undeliverable Distribution and setting forth a current, deliverable address will be deemed to waive any claim to or interest in that undeliverable Distribution and will be forever

29

barred from receiving that undeliverable Distribution or asserting any Claim related thereto against the Debtors, the Liquidating Debtors, the Estates, the Liquidating Trust, the Liquidating Trustee or the Monitoring Committee.  Any undeliverable Distributions that are not claimed under this Article will become Available Cash.  Nothing in the Plan requires the Liquidating Trustee to attempt to locate any Person holding an Allowed Claim and whose Distribution is undeliverable.

## VI.  LITIGATION

### A.    Preservation of Causes of Action and Defenses

Except as otherwise expressly provided in the Plan or the Liquidation Trust Agreement, on the Effective Date, all property of each Estate, including, but not limited to, all claims, rights, defenses and Causes of Action of any of the Debtors shall vest in the Liquidation Trust, free and clear of all liens, Claims, charges or other encumbrances.

Unless expressly waived, released or settled in the Plan or any Final Order, the Liquidating Trustee shall retain, and subject to Advice and Consultation with the Monitoring Committee, may exclusively enforce, any and all claims, rights, defenses and Causes of Action (including without limitation, claims, rights, defenses and Causes of Action not specifically identified, or which the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee and the Monitoring Committee may presently be unaware of, or which may arise or exist by reason of additional facts or circumstances unknown to the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee or the Monitoring Committee at this time, or facts or circumstances which may change or be different from those which the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee or the Monitoring Committee now believe to exist), whether arising before or after the Petition Date, in any court or tribunal, including but not limited to the Bankruptcy Court.

The Liquidating Trustee, is authorized subject to Advice and Consultation with the Monitoring Committee on Consultation Matters, to exercise and perform the rights, powers and duties held by the Debtors' Estates, including without limitation the authority under Bankruptcy Code section 1123(b)(3) to provide for the settlement, adjustment, retention and enforcement of claims, rights, defenses and Causes of Action.  The Liquidating Trustee shall further have the power, and subject to the Advice and Consultation with the Monitoring Committee may exercise discretion, to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, defenses and Causes of Action, and shall not be required to seek Bankruptcy Court approval of such decisions.  The Liquidating Trustee stands in the shoes of the Debtors, the Liquidating Debtors and the Estates and may take such actions in their name without the need to intervene in, amend any pending actions or obtain any further order of the Court.

Notwithstanding anything to the contrary herein, in cases where the Liquidating Trustee determines that he is unable to pursue any claim, right, defense or Cause of Action due to a conflict of interest or for any other reason, the Liquidating Trustee's rights, powers, authorities and discretion described above shall be vested in and exercised by the Monitoring Committee.

No preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or

otherwise), or laches shall apply to such claims, rights, defenses or Causes of Action upon, or after, the Confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such claims, rights, defenses or Causes of Action have been released in the Plan or other Final Order.

No one may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any claim, right, defense or Cause of Action against them as an indication that the Liquidating Trustee  (or the Monitoring Committee, as applicable) will not pursue any and all available claims, rights, defenses and Causes of Action against them.  The Confirmation Order shall not bar the Liquidating Trustee (or the Monitoring Committee, as applicable) by res judicata, collateral estoppel, or otherwise from collecting, prosecuting, settling, or defending any claim, right, defense or Cause(s) of Action.

**THE LIQUIDATING TRUSTEE WILL MAKE THE DECISION TO PURSUE, NOT PURSUE OR SETTLE VARIOUS CAUSES OF ACTION SUBJECT TO ADVICE AND CONSULTATION WITH THE MONITORING COMMITTEE AND ITS COUNSEL. THIS DECISION MAY BE BASED ON MANY FACTORS, INCLUDING BUT NOT LIMITED TO THE MERITS OF THE VARIOUS CAUSES OF ACTION AND THE COSTS REQUIRED TO PROSECUTE SUCH CAUSES OF ACTION.  AS SET FORTH IN ARTICLE VII OF THE PLAN, THE LIQUIDATING TRUSTEE AND THE MONITORING COMMITTEE AND THEIR RESPECTIVE FIRMS, COMPANIES, SHAREHOLDERS, MEMBERS, PARTNERS, OFFICERS, DIRECTORS, EMPLOYEES, PROFESSIONALS, REPRESENTATIVES, SUCCESSORS AND ASSIGNS SHALL NOT HAVE ANY LIABILITY ARISING OUT OF THE LIQUIDATING TRUSTEE'S AND/OR THE MONITORING COMMITTEE'S GOOD FAITH DETERMINATION OF WHETHER OR NOT TO PURSUE PROSECUTION OR SETTLEMENT OF ANY CAUSE OF ACTION.**

## VII.  EXCULPATION

### A.    Limitation of Liability in Connection with the Chapter 11 Case, the Plan, Disclosure Statement and Related Documents

Pursuant to section 1125(e) of the Bankruptcy Code, the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee, the members of the Creditors' Committee, the Monitoring Committee, the members of the Monitoring Committee and the Liquidating Debtors, and their respective present and former firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns (collectively, the "Plan Participants") will neither have nor incur any liability to any Person for any act taken or omitted to be taken in connection with or related to the Cases, including, but not limited to, the formulation, preparation, dissemination, negotiation, implementation, confirmation or consummation of the Plan, the Disclosure Statement, the Confirmation Order, the Liquidation Trust Agreement, or any contract, instrument, release or other agreement, pleading or document created or entered into, the pursuit, non-pursuit or settlement of Causes of Action, or any other act taken or omitted to be taken in connection with or for the purpose of carrying out the Plan, the Disclosure Statement, the Confirmation Order or the Liquidation Trust Agreement or related agreement, including solicitation of acceptances of the Plan ("Exculpated

31

Conduct"); *provided, however*, that no Person shall be relieved of liability for fraud, gross negligence, intentional misconduct or the willful violation of federal or state securities laws or the Internal Revenue Code.

The Plan provides that all Persons are permanently enjoined from commencing, or continuing in any manner, any action or proceeding against any of the Plan Participants, whether directly, derivatively, on account of or respecting any Claim, debt, right, or cause of action based in whole or in part upon any Exculpated Conduct.  Any Plan Participant injured by any willful violation of the injunctions provided in the Plan shall recover from the willful violator actual damages (including costs and attorneys' fees) and, in appropriate circumstances, punitive damages.

**B.      Injunction Against Suing the Chapter 11 Trustee, the Creditors' Committee, the Liquidation Trust, the Liquidating Trustee and the Monitoring Committee**

Unless otherwise provided herein or the Confirmation Order, all injunctions or stays provided for in the Cases pursuant to sections 105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, will remain in full force and effect until the Effective Date.

**As of the Effective Date, all  Persons that have held, hold, or may hold Claims (including, but not limited to, Administrative Expense Claims) or Interests are permanently enjoined, from and after the Effective Date, from (i) commencing or continuing in any manner any action or other proceeding of any kind on account of any such Claim,  Administrative Expense Claim or Interest against the Debtors, the Liquidating Debtors the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee, members of the Creditors' Committee, the Monitoring Committee, or the members of the Monitoring Committee, and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors and assigns (the "Estate Parties"), including, but not limited to, any Claims, Administrative Expense Claims and Interests based upon any act or omission, transaction, or other activity of any kind, type or nature that occurred in connection with the Cases prior to the Confirmation Date; (ii) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Estate Parties arising from any matter related to the Cases; (iii) creating, perfecting, or enforcing any encumbrance of any kind against the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claims (including, but not limited to, Administrative Expense Claims) or Interests; and (iv) asserting any defense or right of setoff, subrogation, or recoupment of any kind against any obligation due from the Estate Parties or against the property, or interests in property, of the Estate Parties with respect to any such Claim (including, but not limited to, Administrative Expense Claims) or Interest.  Provided however, and notwithstanding anything to the contrary in this paragraph, (i) nothing shall impair the rights of a defendant to a Cause of Action from asserting a right of setoff, subrogation, or recoupment as an affirmative defense, (ii) nothing shall impair the rights of Creditors to defend any Claim objection or receive treatment provided under the Plan, (iii) nothing shall prohibit Persons from filing**

**Administrative Expense Claims on or before the Administrative Expense Claims Bar Date, and (iv) nothing shall relieve the Estate Parties from their obligations under the Plan.**

For the avoidance of doubt, and notwithstanding any other provision contained in the Plan or the Confirmation Order, nothing in the Plan or the Confirmation Order shall release or enjoin the prosecution of any claims or Causes of Action held by the Debtors, the Estates or the Liquidation Trust.

## VIII.   OTHER PLAN PROVISIONS

### A.      Conditions to Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date:

(a)     A Final Order finding that the Disclosure Statement contains adequate information pursuant to Bankruptcy Code section 1125 shall have been entered by the Bankruptcy Court; and

(b)     A Confirmation Order in form and substance, reasonably acceptable to the Chapter 11 Trustee and the Creditors' Committee shall have been entered by the Bankruptcy Court.

### B.      The Effective Date

The Plan will not be consummated or become binding unless and until the Effective Date occurs.  The Effective Date will be the first Business Day after the following conditions have been satisfied:

(1)     Fourteen (14) days have passed since the Confirmation Date; and

(2)     The Confirmation Order is not stayed.

### C.      Executory Contracts and Unexpired Leases

#### 1.      Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, the Chapter 11 Trustee will be deemed to have rejected any and all agreements that any and all of the Debtors executed before the Effective Date -- other than agreements that were previously assumed or rejected either by a Final Order or under Bankruptcy Code section 365 -- to the extent that these agreements constitute executory contracts or unexpired leases under Bankruptcy Code section 365.  On the Effective Date, the Confirmation Order will constitute a Court order approving this rejection.

#### 2.      Bar Date for Rejection Damage Claims

Any Rejection Damage Claims arising from the rejection under the Plan of an executory contract or an unexpired lease must be filed with the Court and served on the Liquidating Trustee

and his counsel within thirty (30) days after the Effective Date.  Any Rejection Damage Claims that are not timely filed and served will be forever barred and unenforceable and the Persons holding these Claims will be barred from receiving any Distributions under the Plan on account of their Rejection Damage Claims.  The Liquidating Trustee reserves the right to object to any such Rejection Damage Claims; provided, however, that any such objections must be served and filed not later than the Claims Objection Deadline.

### D.    Entry of a Final Decree

Promptly following the completion of all Distributions contemplated by this Plan, the Liquidating Trustee will file a motion with the Bankruptcy Court to obtain the entry of a final decree.

### E.    United States Trustee Fees and Reports

Pursuant to section 1129(a)(12) of the Bankruptcy Code, any outstanding quarterly fees due and owing to the Office of the United States Trustee under 28 U.S.C. §1930(a)(6) shall be paid from Available Cash in the Estates.  After the Effective Date, the Liquidating Trustee shall file post-confirmation quarterly disbursement reports and pay from Available Cash or a designated Plan Reserve Account all quarterly fees to the Office of the United States Trustee which are required by applicable law.  The Liquidating Trustee shall include in any Plan Reserve created for Post-Effective Date Expenses reasonably sufficient monies to cover the quarterly fees of the Office of the United States Trustee incurred, or to be incurred, after the Effective Date.

### F.    Post-Confirmation Status Reports

The Liquidating Trustee shall file post-confirmation status reports with the Court regarding the status of the implementation of the Plan every 180 days following the Effective Date until the entry of a final decree closing the Cases.

### G.    Post-Effective Date Effect of Evidences of Claims

Commencing on the Effective Date, notes and other evidences of Claims will represent only the right to receive the Distributions contemplated under the Plan.

### H.    Cancellation of Interests

On the Effective Date, all Interests will be cancelled, annulled, and extinguished, and any issued and outstanding shares of common stock, stock options, warrants, membership interests or other evidence of Interests in securities of the Debtors will be deemed to be cancelled and of no further force or effect without any further action by the Debtors or any other Person.  Persons holding Interests will retain no rights and receive no Distribution on account of these Interests, and Persons holding any evidence of Interests in securities of the Debtors will have no rights arising from or relating to such evidence of their Interests or their cancellation.

### I.    Nondischarge of the Debtors

In accordance with Bankruptcy Code section 1141(d), the Confirmation Order will not discharge Claims against the Debtors.  However, no Person holding a Claim may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under the Plan.  As of the Effective Date, all Persons are precluded from asserting against any of the Liquidation Trust Assets or any property that is to be distributed under this Plan any Claims, rights, causes of action, liabilities, or Interests based upon any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided for in the Plan or in the Confirmation Order. For avoidance of doubt, Vijay K. Taneja shall not receive a discharge.  Additionally, upon the entry of the Confirmation Order, and absent a court order providing otherwise, Vijay K. Taneja shall be deemed to have waived discharge under Bankruptcy Code section 1141(d)(4).  Nothing herein shall prevent a Creditor from seeking to recover a Claim from non-Liquidating Trust Assets.

### J.    Common Interest Agreement

All of the Chapter 11 Trustee's and the Creditors' Committee's rights, title and interests set forth in that certain Common Interest Agreement, made and entered into effective as of August 27, 2008 are hereby vested in and preserved and exercisable by the Liquidating Trustee, on behalf of the Chapter 11 Trustee, and the Monitoring Committee, on behalf of the Creditors' Committee.

### K.    No Recourse

No Person entitled to receive a payment or Distribution under the Plan will have any recourse against the Estates, the Chapter 11 Trustee, the Liquidating Trustee, the Creditors' Committee, the members of the Creditors' Committee, the Monitoring Committee or the members of the Monitoring Committee, and their respective firms, companies, shareholders, members, partners, officers, directors, employees, professionals, representatives, successors, and assigns, or their respective property and assets, other than the right to receive Distributions in accordance with the terms of the Plan.

### L.    No Admissions

Notwithstanding anything to the contrary in the Plan, if the Plan is not confirmed, is revoked, or otherwise the Effective Date does not occur, the Plan will be null and void, and nothing contained in the Plan or the Disclosure Statement will: (a) be deemed to be an admission by the Chapter 11 Trustee or the Creditors' Committee with respect to any matter discussed in the Plan or the Disclosure Statement, including liability on any Claim or the propriety of any Claim's classification; (b) constitute a waiver, acknowledgement, or release of any Claims, Interests, or any Causes of Action held by the Debtors or the Estates; or (c) prejudice in any manner the rights of the Debtors, the Estates, the Chapter 11 Trustee or the Creditors' Committee or any creditors or equity security holders in any further proceedings.

### M.    Severability of Plan Provisions

If, before confirmation, the Court holds that any Plan term or provision is invalid, void, or unenforceable, the Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision.  That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated.  The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Article, is valid and enforceable under its terms.

### N.    Governing Law

The rights and obligations arising under the Plan and any agreements, contracts, documents, or instruments executed in connection with the Plan will be governed by, and construed and enforced in accordance with, Virginia law without giving effect to Virginia law's conflict of law principles, unless a rule of law or procedure is supplied by: (a) federal law (including the Bankruptcy Code and the Bankruptcy Rules); or (b) an express choice-of-law provision in any document provided for, or executed under or in connection with, the Plan terms.

### O.    Retention of Jurisdiction

Except as otherwise provided in the Plan, the Bankruptcy Court will retain and have exclusive jurisdiction:

(a)    to hear and determine any dispute arising under the Plan, its implementation and the execution of any necessary documents thereunder, and any requests to amend, modify, or correct the Plan, provided such matters are brought before the Court prior to the point of substantial consummation;

(b)    to grant extensions of any deadlines set forth in the Plan and/or the Confirmation Order as may be appropriate;

(c)    to enforce the provisions  of the Plan;

(d)    to consider and rule upon Professional Fee Claims and post-Effective Date fee disputes;

(e)    to hear and determine objections to Claims;

(f)    to hear and determine all motions, adversary proceedings, applications, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Liquidating Trustee or the Monitoring Committee after the Effective Date, including without limitation all Causes of Action; and

       (g)     To hear and determine timely filed objections in accordance with the standards set forth in Article V.F.3.

If the Court abstains from exercising jurisdiction, or is without jurisdiction, over any matter, this Article will not affect, control, prohibit, or limit the exercise of jurisdiction by any other court that has jurisdiction over that matter.

### P.    Successors and Assigns

The rights, benefits, and obligations of any Person referred to in this Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor, or assign of that Person.

### Q.    Saturday, Sunday, or Legal Holiday

If any payment or act under the Plan should be required to be made or performed on a day that is not a Business Day, then the payment or act may be completed on the next succeeding day that is a Business Day, in which event the payment or act will be deemed to have been completed on the required day.

### R.    Plan Modification

Subject to the restrictions set forth in Bankruptcy Code section 1127, the Chapter 11 Trustee and the Creditors' Committee (prior to the Effective Date) or the Liquidation Trustee and the Monitoring Committee (after the Effective Date) reserve the right to alter, amend, or modify the Plan before it is substantially consummated.

### S.    Withdrawal of the Plan

The Chapter 11 Trustee and the Creditors' Committee reserve the right to withdraw the Plan before the Confirmation Date.

### IX.

### RECOMMENDATIONS AND CONCLUSION

The Chapter 11 Trustee and the Creditors' Committee, as proponents of the Plan, strongly recommend that all creditors receiving a Ballot vote in favor of the Plan. The Chapter 11 Trustee and the Creditors' Committee believe that the Plan maximizes recoveries to all Creditors entitled to receive distributions on their Allowed Claims and, thus, is in their best interests. The Plan as structured, among other things, allows creditors to participate in distributions in excess of those that would be available if the Debtors were liquidated under chapter 7 of the Bankruptcy Code, and minimizes delays in recoveries to all Creditors entitled to receive distributions on their Allowed Claims.

Dated:  June 16, 2011

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF VIJAY K. TANEJA, ET AL.

By: /s/ Roy M. Terry, Jr.
  Roy M. Terry, Jr., Chairperson

GREENBERG TRAURIG, LLP

By: /s/ Lawrence E. Rifken
  Lawrence E. Rifken, Esq.
  John T. Farnum, Esq.
  1750 Tysons Blvd., Ste. 1200
  McLean, Virginia  22102

  *Counsel for the Official Committee*
  *of Unsecured Creditors*

CHAPTER 11 TRUSTEE

By:  /s/ H. Jason Gold
  H. Jason Gold,  Chapter 11 Trustee

WILEY REIN LLP

By:  /s/ Valerie P. Morrison
  H. Jason Gold, Va. Bar No. 19117
  Valerie P. Morrison, Va. Bar No. 24565
  Alexander M. Laughlin, Va. Bar No.  25237
  7925 Jones Branch Drive, Suite 6200
  McLean, Virginia 22102

  *Counsel to the Chapter 11 Trustee*

13313620.1